**Franklin DASO**

v.

**THE GRAFTON SCHOOL, INC.**

**No. CIV.A. DKC 2000–658.**

United States District Court,
D. Maryland.

Jan. 24, 2002.

John J. Condliffe, Shub–Condliffe & Condliffe, P.A., Towson, MD, Mark D. Stave, Towson, MD, Law Office, Towson, MD, for Plaintiff.

Kurt C. Schultheis, Fedder and Garten, PA, Baltimore, MD, John S. Vander-Woude, Law Office, Baltimore, MD, Heather S. O'Connor, Eccleston and Wolf, Baltimore, MD, for Defendant.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution in this case brought under 42 U.S.C. §§ 2000e–3 *et seq.* ("Title VII") and 42 U.S.C. § 1981 are 1) the motion of Defendant Grafton School, Inc. ("Grafton") for summary judgment on Plaintiff's claims for hostile work environment discrimination[1], and 2) Plaintiff's motion for leave to amend his complaint to include a retaliation claim and extend the deadline on the scheduling order for seeking leave to amend[2]. The issues have been fully briefed and no hearing is deemed necessary. Local Rule 105.6. For reasons that follow, the court will deny Plaintiff's motion for leave to amend and extend the deadline and grant Grafton's motion for summary judgment.

## I. Background

The following facts are uncontroverted or, unless otherwise noted, set forth in the light most favorable to Plaintiff. Grafton is a private, non-profit Virginia corporation which operates group homes, schools and

1. Although Plaintiff alleges in his complaint that Grafton denied him a promotion, he does not mention the promotion in his opposition to Grafton's motion for summary judgment nor does he proffer any evidence relating to a failure by Grafton to promote him. Both Grafton and this court construe that allegation as an aspect of the hostile environment claim, and not as a separate intentional discrimination claim.

2. This is one of several related claims by employees against Grafton, all of whom are represented by the same attorney. Monita Short, DKC 2000–223, and Deborah Briscoe, DKC 2001–548, settled. Before the Short case settled, it was consolidated for discovery purposes with this case, Etta Nicole, DKC 2000–324, and Susie Sonpon, DKC 2000–1914. Discovery was begun in the consolidated cases pursuant to a January 3, 2001, scheduling order and was partially completed, including some depositions, before motions were filed by Grafton. There has been no formal discovery in the cases of Kenneth Onuoha, DKC 2001–339, Samson Eruanga, DKC 2001–549, and Carolyn Oladokun, DKC 2001–550.

other facilities for intellectually and physically handicapped children. Paper no. 5, at 2, ex. A, at ¶ 4. Beginning on December 16, 1996, Plaintiff Franklin Daso, a black African male resident of the United States, was employed by Grafton, first as a part time Substitute Instructor and currently as a Residential Instructor. Paper no. 24, at 2. Plaintiff received consistently good to excellent marks on evaluations he received in 1999 as well as several awards for his performance at Grafton. Paper no. 19, Ex. 2, 3, 5.

On or about April 12, 1999, Plaintiff was working a shift at Frankfort House, one of the Grafton residences. He was standing in the front of the house with an autistic client, Charlie, and had the door locked in order to prevent clients from walking off. Sean Lore, a Grafton supervisor, apparently became angry when he tried to enter the house and found the door locked. After Plaintiff unlocked the door and let Lore into the house, Lore yelled, "The next time you niggers lock the door, I'm going to write you up!" Paper no. 15, Ex. 4.

Plaintiff reported the incident to a family member and to his shift supervisor, Monita Short, the Supervisor for Academic Programs. Plaintiff had a meeting to discuss the situation with Keith King, Lore's supervisor. Later, King allegedly told Plaintiff that he did not believe Lore would use a racial slur and that Plaintiff did not have a case because it would just be Plaintiff's word against Lore's. Paper no. 19, Ex. 4. According to Plaintiff, his autistic student witnessed the remark but would not be able to recount the incident. Plaintiff admits that at no other time did he hear Lore use a racial slur. Paper no. 15, Ex. A, at 54–55. Grafton never took any other action based on Plaintiff's complaints about Lore.

On or about June 21, 1999, within 180 days of the incident, Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) against Grafton. Complaint, at ¶ 7. On February 4, 2000, Plaintiff received a "right to sue" letter from the EEOC based on claims of employment discrimination under Title VII. Plaintiff filed this suit promptly after receiving the "right to sue" letter.

In his complaint, Plaintiff claims that he was discriminated against "regarding the terms and conditions of [his] employment on the basis of race . . . ." Complaint, at § 10. Grafton responded with the pending motion for summary judgment, challenging Plaintiff's allegations as contradicted by his deposition in which he testified that a Grafton employee used a racial epithet in his presence on only one occasion. Grafton argues that the one-time occurrence of discrimination does not allow for a recovery by Plaintiff.

Subsequent to the filing of the summary judgment motion, Plaintiff sought to amend his complaint to include a retaliation claim based on three actions taken by Grafton which, he alleges, were taken in retaliation for bringing charges against Grafton. Grafton placed Plaintiff on a 60–day probation effective December 23, 1999, for an incident occurring on December 18, 1999, in which a student under Plaintiff's supervision was left unattended and wandered off. Plaintiff was again placed on probation on May 23, 2000, this time for 90 days, because of an April 17, 2000, confrontation he had with another staff member in front of Grafton students after a staff member accused him of sexual harassment. Paper no. 19, Ex. 1, at 96–120. Plaintiff claims that he received both probations unfairly and that they were given in retaliation for the charges he filed against Grafton. He admits that neither probation was given on the basis of race.

Paper no. 19, Ex. 1, at 84. Finally, Plaintiff claims that on several unspecified occasions he has been denied money by Lore intended for student activities or that Lore has failed to reimburse him for out-of-pocket expenses. *Id.*, at 80. Plaintiff never filed a separate charge of retaliation with the EEOC after these incidents occurred.

Plaintiff filed the motion for leave to amend after the February 20, 2001, date set on the court's scheduling order for filing such motions. He also filed a motion to extend the deadline on the scheduling order.

## II. Motion for Leave to Amend Complaint and Extend Deadline

▉ Plaintiff filed a motion dated March 5, 2001 seeking leave to amend his complaint. The court's scheduling order set a deadline of February 20, 2001, by which all motions for leave to amend were to be filed. Paper no. 13. Plaintiff's motion to amend his complaint after the deadline triggers both Fed.R.Civ.P. 15(a) governing amendments to pleadings and Fed.R.Civ.P. 16(b) which governs modification to a scheduling order. The standards for satisfying the rules are at odds. Rule 15(a) states, in pertinent part, that "...leave shall be freely given when justice so requires." According to Rule 16(b), however, "[a] schedule shall not be modified except upon a showing of good cause and by leave of the district judge...."

Neither the Fourth Circuit nor the Supreme Court has dealt decisively with the interplay of these two rules when a motion to amend is made after the deadline set in the scheduling order has passed [3]. However, one district court in the Fourth Circuit set up a "two-step" analysis:

> Once the scheduling order's deadline for amendment of the pleadings has passed, a moving party first must satisfy the good cause standard or Rule 16(b). If the moving party satisfies Rule 16(b), the movant then must pass the tests for amendment under 15(a).

*Marcum v. Zimmer*, 163 F.R.D. 250 (S.D.W.Va.1995); *see also Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–608 (9th Cir.1992) (applying "two step" analysis to deny motion to amend for lack of good cause). In this case, the court will skip the "two step" analysis because, for reasons of prejudice and futility, the court would not grant the motion for leave to amend under Rule 15(a) even if good cause existed to alter the scheduling order. Therefore, the only pertinent analysis is under Rule 15(a).

Under Rule 15(a), "[t]he decision to grant a party leave to amend its pleadings rests within the sound discretion of the district court." *HealthSouth Rehabilitation Hospital v. American Red Cross*, 101 F.3d 1005, 1010 (4th Cir.1996), *cert. denied*, 520 U.S. 1264, 117 S.Ct. 2432, 138 L.Ed.2d 194 (1997), *citing Sandcrest Outpatient Serv. v. Cumberland County Hosp. Sys.*, 853 F.2d 1139, 1148 (4th Cir.1988). The general and oft-cited rule is that leave sought should be freely given, "in the absence of any apparent or declared reason such as undue delay, bad faith or dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc....." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). While delay is not in

---

**3.** In an unpublished opinion, *Lone Star Transp., Corp. v. Lafarge Corp.*, 19 F.3d 1429, 1994 WL 118475 (4th Cir.1993) (table), the Fourth Circuit refused to consider whether the district court was correct to link Rule 15(a) and 16(b) because it concluded that the amending party met both standards.

itself sufficient for denial of leave, "[d]elay, however, can be a sufficient reason for denial of leave when accompanied by futility or prejudice to the non-movant." *HealthSouth*, 101 F.3d at 1010, *citing Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987), *cert. denied*, 485 U.S. 977, 108 S.Ct. 1271, 99 L.Ed.2d 483 (1988).

Not only would it be prejudicial to Grafton to allow Plaintiff to amend his complaint to include the retaliation claim after the near completion of discovery and filing of a motion for summary judgment, but it also would be futile for Plaintiff to bring one of his allegations as part of the claim because of failure to exhaust administrative remedies.

Plaintiff filed his motion on March 5, 2001, five days after Grafton filed its February 28 motion for summary judgment. More importantly, discovery was already substantially complete. Grafton had already taken Plaintiff's deposition and allowing the amendment would likely necessitate another round of discovery and delay. Plaintiff argues that he forecast the retaliation claim in a phone conversation with Grafton's counsel on February 23, 2001, and during Plaintiff's deposition on December 26, 2000, when Plaintiff's counsel claims to have informed Grafton of Plaintiff's intention to bring a retaliation claim. Paper no. 20, at 1–2. Moreover, Plaintiff argues that Grafton did question Plaintiff about possible retaliation during his deposition, so further depositions would not be necessary. *Id.*, Ex. 1, at 88–89, 104. These arguments do not offset the prejudice to Grafton. Although Plaintiff may have forecast his intention on February 23, that was already after the date for filing motions set in the scheduling order. Furthermore, by Plaintiff's admission, he never sent Grafton a copy of the earlier, incorrectly filed motion that he claims to have filed on February 13 and received back on February 17, still three days before the deadline, so the delay was entirely his fault and within his ability to rectify. Paper no. 17, at 1; Paper no. 20, at 1.

Even though prejudice to Grafton alone justifies denying leave to amend, it would also be futile for Plaintiff to amend his complaint to include a retaliation charge based on the 90 day probation he received from Grafton on May 23, 2000, because he failed to exhaust his administrative remedies when he did not file a separate retaliation charge with the EEOC. In order to bring a Title VII claim of discrimination in federal court, a plaintiff must first file a charge with the EEOC and then receive a "right to sue" letter. There is a narrow exception to that rule that "... the scope of a Title VII lawsuit may extend to 'any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the [EEOC].'" *Nealon*, 958 F.2d at 590, *quoting Hill v. Western Electric Co.*, 672 F.2d 381, 390 n. 6 (4th Cir.1982) (internal citations omitted), *cert. denied*, 459 U.S. 981, 103 S.Ct. 318, 74 L.Ed.2d 294 (1982). Plaintiff's retaliation claim must satisfy both aspects of this exception in order to be considered part of the same EEOC administrative procedure: 1)it must flow out of the allegations contained in the EEOC charge, and 2) it must occur while the EEOC complaint is still pending. While Plaintiff could bring a retaliation claim based on retaliation occurring during the pendency of his EEOC claim, which would include the December, 1999, probation, he failed to exhaust his administrative remedies with respect to his other claim of retaliation. Therefore, with respect to those claims of retaliation occurring after he received his "right to sue" letter on February 4, 2000, it would be futile to amend the complaint.

Granting Plaintiff leave to amend his complaint would prejudice Grafton and, with respect to at least one incident of claimed retaliation, would be futile. Accordingly, where Plaintiff's delay was of his own making, the court will deny Plaintiff's motion to extend the deadline on the scheduling order for leave to amend the complaint.

## III. Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir.1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Pulliam Inv. Co.*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir.1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. In *Celotex Corp.*, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. However, "'a mere scintilla of evidence is not enough to create a fact issue.'" *Barwick v. Celotex Corp.*, 736 F.2d 946, 958–59 (4th Cir.1984) (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C.1966), aff'd, 388 F.2d 987 (4th Cir.1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

## IV. Analysis

Title VII of the Civil Rights Act of 1964 provides that an employer shall not "fail or refuse to hire or discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Section 1981(a) states in pertinent part that: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts... as is enjoyed by white citizens...." Because the "at-will employment relationship is contractual... such relationships may therefore serve as predicate contracts for § 1981 claims." *Spriggs v. Diamond Auto Glass II*, 242 F.3d 179, 183 (4th Cir.2001), *quoting Spriggs v. Diamond Auto Glass I*, 165 F.3d 1015, 1018–1019 (4th Cir.1999). In *Spriggs*, the plaintiff brought the same allegations under both Title VII and § 1981 and the court applied the same analysis to the claims under both statutes. The court will treat the claims as identical here as well.

Plaintiff alleges that he is the victim of a hostile work environment created by Grafton on the basis of his race and contends that Grafton has subjected Plaintiff to "a pattern and practice of humiliation and harassment" including, "allowing hostile racial slurs and comments." Complaint, at ¶ 10. Plaintiff is challenged to provide evidence to support the allegations in his complaint. While Plaintiff has brought forth some evidence of discriminatory incidents supported by personal knowledge in his deposition testimony and his EEOC complaint, the evidence is too little when only one incident, however offensive, can support his claim.

The Fourth Circuit stated the test for a hostile work environment claim in *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir.1998), *citing Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 772 (4th Cir.1997):

> To state a claim for hostile work environment, [the plaintiff] must show that: (1) the harassment was unwelcome; (2) the harassment was based on his race or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer.

In that case, while the Fourth Circuit did not agree with all of the district court's conclusions, it upheld the grant of summary judgment for the defendant on the plaintiff's hostile work environment claim because there were only conclusory and unspecific allegations that the incidents complained of by the plaintiff resulted from animosity based on the plaintiff's race or age. *Id.*, at 801–802.

In order to support a claim for hostile work environment, the alleged conduct must not only "create an objectively hostile or abusive work environment, [but the] victim must also perceive the environment to be abusive." *Spriggs*, 242 F.3d at 184 (internal citations omitted). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive-is beyond Title VII's purview." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). To determine whether the harassment was pervasive enough to render the work environment objectively abusive:

> ... the court looks to all the surrounding circumstances including "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating or a mere offensive utterance; and (4)

whether it unreasonably interferes with [the] employee's work performance."

*Talley v. Farrell*, 156 F.Supp.2d 534, 541 (D.Md.2001), *quoting Smith v. First Union Nat. Bank*, 202 F.3d 234, 242 (4th Cir.2000) (internal citations omitted).

In trying to establish his claim, Plaintiff lists a timeline of events that occurred at the school which, he contends, support his claim of a hostile work environment. Paper no. 11, at 3–5. However, Grafton contends that the objective prong of the hostile work environment test cannot be met because only one of the incidents involves Plaintiff[4]. Paper no. 13, at 5. There is no evidence, or even allegation, that Plaintiff knew of the other incidents listed on the timeline at or around the time they occurred. In fact, Plaintiff admits that he never heard Lore use a racial epithet on other occasions, something alleged in statements submitted by Plaintiff's co-workers as evidence of other incidents on the timeline. Paper no. 24, Ex. A, at 54–56. Conduct targeted at persons other than Plaintiff may be considered in support of a hostile work environment claim because, "[w]e are, after all, concerned with the 'environment' of workplace hostility, and whatever the contours of one's environment, they surely may exceed the individual dynamic between the complainant and his supervisor." *Spriggs*, 242 F.3d at 184, *citing Walker*, 684 F.2d at 1359 n. 2. However, the subjective element of the test in *Spriggs* requires that the alleged victim perceived his environment to be hostile. Events which occurred without the knowl-

edge of Plaintiff could not have contributed to his perception that the workplace was hostile. Therefore, timeline events not involving Plaintiff are not evidence which support his hostile work environment claim.

There are three incidents on the timeline which directly involve Plaintiff and so, if proven, could support his claim; the door-locking incident and the two times Plaintiff was placed on probation at Grafton. Paper no. 15, at 5. While Grafton assumes that the two probation incidents were cited by Plaintiff only as instances of alleged retaliation (Paper no. 21, at 2), they could be used by Plaintiff to support his hostile work environment claim if he can prove that his probation was motivated improperly by race. The last piece of evidence proffered by Plaintiff that could support his claim is that Lore withheld money that was to be used for group activities by Grafton residents under Plaintiff's supervision. Paper no. 15, Ex. 1, at 80.

Aside from the door-locking incident, the other three incidents lack evidence from which it could be inferred they resulted from animosity based on race. Plaintiff admitted in his deposition that, while he believes he was put on probation unfairly, he was not put on probation because of his race. Paper no. 15, Ex 1, at 84. Additionally, Plaintiff has admitted to the truth of the circumstances stated by Grafton as the reasons for his probations[5], though he challenges the fairness of those decisions.

---

**4.** Grafton overlooks two incidents cited by Plaintiff which it characterizes as meant to support his potential retaliation claim. Evidence of these incidents could be used to support Plaintiff's hostile work environment claim as well and so must be considered.

**5.** There does appear to be a factual dispute regarding the identity of the staff member

with whom Plaintiff had the confrontation that led to his 90–day probation. However, that dispute is not material to the question of whether the decision to place Plaintiff on probation was discriminatory because the existence of a dispute occurring in front of students is not at issue.

*Id.*, at 96–116.[6] Therefore, neither instance of probation supports his hostile work environment claim. Similarly, Plaintiff's allegation that Lore would occasionally refuse to provide activity money for the residents or reimburse Plaintiff lacks any evidence linking it to race other than the connection to Lore, who was responsible for the door-locking incident. In addition, Fed.R.Civ.P. 56(e) requires that a party opposing a motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial." Plaintiff's allegation is a blanket accusation that lacks sufficient specificity to serve as a basis for opposing summary judgment. Paper no.15, Ex. 1, at 80.

There is no question that the remaining alleged incident involves discriminatory conduct. In that incident, Sean Lore, one of Grafton's supervisors, apparently angry that the door to one of the residences was locked, yelled at Plaintiff, "Next time you all niggers lock the door, I'm going to write you up." Paper no. 15, Ex. 4; Paper no. 24, Ex. A, at 48. The word "nigger" is more than the "mere offensive utterance" listed as the third factor in the hostile environment test. No word in the English language is as odious or loaded with as terrible a history. "Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates." *Rodgers v. Western–Southern Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993) (citation and internal quotation marks omitted).

Even though egregious, use of this language by the supervisor is not sufficient to satisfy the hostile work environment test because it is not sufficiently pervasive. While the statement allegedly was used in Plaintiff's presence and directed at him, courts have upheld hostile work environment claims based on the use of similar "racially abusive language" only where that use, "was repeated, continuous and prolonged despite [the plaintiff's] objections..." *Walker v. Ford Motor Co.*, 684 F.2d 1355, 1359 (11th Cir.1982). In *Spriggs*, another case involving the use of the word "nigger" by a supervisor, "[the defendant's] frequent and highly repugnant insults were sufficiently severe or pervasive (or both) to cause a person of ordinary sensibilities to perceive that the work atmosphere at the Forestville store was racially hostile." *Spriggs*, 242 F.3d at 185. Plaintiff admits that he has no personal knowledge of Lore using racially abusive language at any other time. Paper no. 24, Ex.A, at 55–56.

Although the language allegedly used by Lore to his subordinates, if true, is despicable and rises above the level of mere utterances, a single incident is not sufficiently frequent or pervasive so as to create a hostile work environment. Therefore, Plaintiff's claim does not meet the objective test described in *Spriggs*. Accordingly, Grafton's motion for summary judgment will be granted.

### V. Conclusion

Plaintiff's motion to extend the deadline set in the scheduling order and for leave to amend his complaint to include a retaliation claim is denied because it would be prejudicial to Grafton and largely futile. Because Plaintiff forecasts evidence of only a single incident of racial discrimination,

---

**6.** Plaintiff sought to challenge those decisions by amending his complaint to include allegations that his probations were retaliatory for bringing charges against Grafton. For rea-

sons stated above, leave to amend was denied and those retaliation claims are not a part of this lawsuit.

he cannot satisfy the test for hostile work environment discrimination. Accordingly, the court will grant Grafton's motion for summary judgment in its favor on Plaintiff's claims under Title VII and § 1981.