# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-60154

United States Court of Appeals
Fifth Circuit

**FILED**

January 10, 2019

Lyle W. Cayce
Clerk

BILL D. VESS,

Plaintiff - Appellant

v.

MTD CONSUMER GROUP, INCORPORATED,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Mississippi
USDC. No. 1:16-CV-80

Before STEWART, Chief Judge, and KING and OWEN, Circuit Judges.

PER CURIAM:*

Bill D. Vess appeals the district court's grant of summary judgment in favor of Defendant MTD Consumer Group, Inc. on Vess's Title VII and 42 U.S.C. § 1981 racial discrimination claims. For the reasons below, we AFFIRM.

## I. FACTUAL BACKGROUND

Vess, a white male, began work at the Verona, Mississippi plant of MTD as a press operator in 2001. In 2003, Vess was promoted to the position of

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

"robotics tech." He performed maintenance and set the machines to run different jobs. In 2007, Vess was promoted to "lead person" in the weld shop. During Vess's entire time in the weld shop, his supervisor was Walter Rock, a white, salaried employee.

MTD has a Non-Harassment Policy which states that any "[a]ctions, words, jokes or comments based on an individual's race, color, [or] gender" will not be tolerated. In its Position Statement to the Equal Employment Opportunity Commission ("EEOC"), MTD claimed it has a "zero-tolerance policy" in regard to employees who use racial slurs or violate the Non-Harassment Policy.[1]

Vess testified that throughout most of his employment, Caron Ewing, a black, female employee, harassed him. At one company Christmas party, Ewing inappropriately grabbed his buttocks. On another occasion, when Vess was working on a machine, Ewing pulled down Vess's pants in the middle of the plant. Vess reported Ewing to MTD personnel manager Murry Blankenship in 2012. After an investigation, MTD issued Ewing a verbal warning.

A few weeks before Vess's termination, he and a black employee, Blaq, were involved in an altercation. While Vess and Blaq argued, Ewing allegedly stood in the background instigating the argument. Vess recalls Ewing saying, "he ain't no man. He's a white man. They ain't never made a good white man."

Vess reported Ewing's racial comment to David Hancock, who was then the plant production manager and Rock's immediate supervisor. Ewing was not disciplined. Approximately two weeks after Ewing's racially-based

---

[1] At the time of his hire and thereafter, Vess acknowledged receipt of MTD's handbook, including its policies prohibiting discrimination, harassment, and retaliation, as well as MTD's procedure for reporting any concerns.

comment, Vess took medical leave pursuant to the Family and Medical Leave Act ("FMLA") for anxiety.

While Vess was on FMLA leave, white, hourly-worker David Hamblin gave a written statement to Human Resources ("HR") Manager William Cherry that Vess, white, hourly-worker Jamey Holland, and Rock were using racial slurs. Hamblin reported that he heard Vess use the N-word multiple times "to describe the workers or out of frustration." Cherry then interviewed other persons mentioned by Hamblin in his written statement. Billy Coker, a white MTD employee, and Tommy White, a black MTD employee, confirmed they had heard Vess use the N-word on multiple occasions. Cherry subsequently terminated Rock and Holland.

When Vess returned from FMLA leave, Cherry told Vess that he had been accused of making racial slurs. Vess denied that he used racial language but admitted that "several years" ago he had referred to a machine as being "N-rigged." At Vess's request, Cherry conducted an additional investigation that only confirmed the evidence of racial epithets made by Vess. On May 4, 2015, Cherry informed Vess that he was terminated.

MTD operates an Employee Peer Review Board ("EPRB"), which has the authority to affirm or overturn employment decisions by management. Both Vess and Holland appealed to the EPRB.[2] On April 14, 2015, the EPRB overturned Holland's termination. On May 7, 2015, the EPRB, consisting of four black employees and one white employee, voted three-to-two to uphold Vess's termination.[3] After Vess's termination, MTD selected a white male for the position.

---

[2] Rock could not appeal because he was a management employee.

[3] Vess's EPRB had the exact same racial make-up as Holland's.

3

No. 18-60154

## II. PROCEDURAL HISTORY

Vess's lawsuit alleged that MTD terminated his employment because of his race, sex, age, and disability, as he was a white male, 59-years old at the time of his termination, and suffered from anxiety. He also claimed MTD terminated him in retaliation for taking leave under the FMLA.[4] On May 12, 2017, MTD filed a motion for summary judgment, arguing that all of Vess's claims were without merit and should be dismissed as a matter of law. On May 26, 2017, Vess filed his response in opposition to MTD's motion. The district court granted MTD's motion for summary judgment on all claims on February 16, 2018. The district court found that Vess failed to identify any proper comparators who were treated more favorably under nearly identical circumstances, and that Vess failed to demonstrate that MTD's legitimate, non-discriminatory reason for terminating his employment was merely pretext for unlawful racial discrimination. Vess appeals only the district court's entry of summary judgment in favor of MTD on his racial discrimination claim.

## III. DISCUSSION

### A. Racial Discrimination in Violation of Title VII and 42 U.S.C. § 1981

The Fifth Circuit reviews a lower court's grant of summary judgment de novo, applying the same standard as the district court. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). Not every factual dispute between the parties will prevent

---

[4] Vess abandons his claims for age, disability, and sex discrimination, as well as his retaliation claim for exercising his rights under the FMLA for purposes of this appeal.

summary judgment; rather, the disputed facts must be material and must have the potential under the substantive law governing the issue to affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A plaintiff's mere beliefs, conclusory allegations, speculation, or unsubstantiated assertions are insufficient to survive summary judgment. *See Clark v. Am.'s Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997) (citation omitted).

The summary judgment analysis is the same for racial discrimination claims under § 1981 and Title VII. *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004). Claims of discrimination based on circumstantial evidence, such as here, are subject to the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). To survive a summary judgment motion under this framework:

> The plaintiff must first demonstrate a *prima facie* case, and then the burden of production shifts to the defendant to proffer a legitimate, non[-]discriminatory reason for its action. If it does that, the presumption of discrimination disappears. The plaintiff, who always has the ultimate burden, must then produce substantial evidence indicating that the proffered legitimate non[-]discriminatory reason is a pretext for discrimination.

*Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016) (internal citations and quotation marks omitted).

A plaintiff may establish a prima facie case of discrimination by showing that: "(1) he is a member of a protected class; (2) he was qualified for the position at issue; (3) he was the subject of an adverse employment action; and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances." *Lee v. Kan. City S.*

*Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009); *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007).[5]

It is undisputed that Vess meets the first three prongs in his prima facie case: he is a member of a protected class, he was qualified for the position, and his employment was terminated. The disputed issue is whether others similarly situated but outside his protected class were treated more favorably under nearly identical circumstances.

We conclude that Vess failed to meet his prima facie burden.[6] As a general rule, employees are not similarly situated if they work under different

---

[5] Quoting *Dulin v. Board of Commissioners of Greenwood Leflore Hospital*, 586 F. App'x 643, 648 (5th Cir. 2014) (per curiam) (unpublished), Vess argues for the first time on appeal that to satisfy the fourth prong of the prima facie case he need only have shown that he was "otherwise discharged because of his membership in the protected class" and that he did not need to identify any similarly situated comparator. However, *Dulin* is not controlling here. Further, Vess improperly conflates his burden at the prima facie stage with this court's holdings regarding the issue of pretext. Quoting *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004), Vess claims he can meet his prima facie burden by showing "that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic" (citation omitted). However, this so-called mixed-motives analysis does not arise unless Vess first establishes a prima facie case of discrimination. Applying a Title VII analysis to an ADEA claim, the court in *Rachid* held:

> Under . . . the modified *McDonnell Douglas* approach: *the plaintiff must still demonstrate a prima facie case of discrimination*; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative).

*Id.* at 312 (emphasis added) (citations omitted).

[6] The district court assumed without deciding that Vess established a prima facie case by denying that he had violated a work rule and proceeded to the next steps in the *McDonnell Douglas* analysis. *See Vess v. MTD Consumer Group, Inc.*, No. 1:16-cv-00080, 2018 WL 934935, at *7 (N.D. Miss. Feb. 16, 2018) ("District courts in the Fifth Circuit are split on

supervisors, work for different divisions of a company, have different work responsibilities, or commit dissimilar work violations. *Lee*, 574 F.3d at 259–60; *see also Frazier v. Sabine River Auth. La.*, 509 F. App'x 370, 373 (5th Cir. 2013) (per curiam) (unpublished); *Amezquita v. Beneficial Tex., Inc.*, 264 F. App'x 379, 386 (5th Cir. 2008) (per curiam) (unpublished) (stating that "[] distinction in position and supervision has been held sufficient to establish that two persons are not similarly situated.").

Vess makes several arguments on appeal. His primary argument is that the district court's view of what it means to be a "nearly identical" comparator was too narrow. He avers that he "cannot identify a particular black lead person who used the exact same discriminatory language ('N-rigged') as he did. Such a requirement is practically impossible. [He] can, however, prove that black persons pervasively used the same racially-charged word (the N-word), and can also prove that race-based comments by Ewing were made almost immediately before [his] discharge, whereas, on the other hand, his 'N-rigged' comment is 'several years' old."

As the district court duly noted, Vess does not offer any evidence to show that the black employees were similarly situated or that their use of the N-word was ever reported. We therefore remain unpersuaded by this first claim. Similarly, Vess fails to present evidence that Ewing is a viable comparator. Vess agrees he held a position of leadership, was held to a higher standard of

---

whether a simple, self-serving denial, as Vess presents, is sufficient to establish a prima facie case."). However, MTD's policy specifically prohibits the use of racial slurs, Vess admitted he used the N-word in the workplace on at least one occasion by referring to a machine as "N-rigged," and courts have found his admitted use of the term "N-rigged" to be on par with other uses of the N-word. *See Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 862 n.8 (5th Cir. 1993) (citing *Brewer v. Muscle Shoals Bd. of Educ.*, 790 F.2d 1515, 1521–22 (11th Cir. 1986) (school superintendent's comment referring to a school system as "n-----rigged" was direct evidence of discriminatory animus).

conduct, and was an example to the employees he supervised. Ewing was an operator and not in a position of leadership. Vess worked in the weld shop and Ewing worked in the press shop. Rock was Vess's supervisor and Kebby Hardin was Ewing's supervisor.

Moreover, Ewing's comment of "no good white men" (not reported to HR) is not "nearly identical" to the corroborated complaint against Vess (reported to HR) that he used the N-word on multiple occasions in the workplace. "It is beyond question that the use of the '[N-]word []' is highly offensive and demeaning, evoking a history of racial violence, brutality, and subordination." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1116 (9th Cir. 2004). This word is "perhaps the most offensive and inflammatory racial slur in English, . . . a word expressive of racial hatred and bigotry." *Swinton v. Potomac Corp.*, 270 F.3d 794, 817 (9th Cir. 2001) (citation omitted) (ellipsis in original); *see also Daso v. Grafton Sch., Inc.*, 181 F. Supp. 2d 485, 493 (D. Md. 2002) ("The [N-] word [] is more than [a] 'mere offensive utterance' . . . . No word in the English language is as odious or loaded with as terrible a history."); *Rodgers v. W-S Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993). (citations omitted) ("Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as [the N-word] [] by a supervisor in the presence of his subordinates.").

While the N-word is an "expressi[on] of racial hatred and bigotry," "no good white men" is more akin to "a 'mere offensive utterance.'" *See Swinton*, 270 F.3d at 817; *Daso*, 181 F. Supp. 2d at 493. Therefore, because comparative employees must be "nearly identical" in their workplace conduct, Vess failed to show similar violations between him and Ewing. *See Lee*, 574 F.3d at 259 (finding "employees . . . who are subjected to adverse employment action for dissimilar violations are not similarly situated."); *Glaskox v. Harris* County,

537 F. App'x 525, 530 (5th Cir. 2013) (per curiam) (unpublished); *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001).

In addition, Cherry testified that he could not recall a single incident when he received a report of an employee's use of racial slurs that did not result in termination. The only similar incident involving racial slurs that Cherry could recall also resulted in termination. As such, the district court correctly found that Vess failed to identify any proper comparators who were treated more favorably under nearly identical circumstances.

Even so, MTD has presented a legitimate, non-discriminatory reason for his discharge: MTD terminated Vess because HR received a formal complaint about his use of racial slurs in the workplace. To overcome MTD's non-discriminatory reason, Vess would have to "show[] that [MTD's] proffered explanation is false or 'unworthy of credence.'" *Thomas v. Johnson*, 788 F.3d 177, 179 (5th Cir. 2015) (citation omitted). He must do more than merely dispute MTD's reasoning and methods. *See id.* (holding that a factual dispute regarding reason for termination insufficient to establish pretext where plaintiff failed "to show not only that the determination was wrong, but also that it was reached in bad faith").

Vess claims no witness provided a *specific* racist statement made by him. He also provides what he calls "persuasive explanations" as to why witnesses may have lied about him making racist statements. Vess described "hard feelings" between him and Hamblin, arising out of Hamblin's desire to direct the work in the shop. Vess also questions White's credibility because Vess had continuously corrected him for taking God's name in vain, and because White believed that Vess was dating his girlfriend. Vess further claims that MTD was motivated by Vess's association with Rock, who Vess claims is a racist.

9

No. 18-60154

We find that Vess's arguments are without merit. MTD terminated Vess's employment only after receiving a formal complaint that was corroborated by multiple employees of different races, who stated during MTD's investigation that they heard Vess use racial slurs more than once in the workplace. Although Vess initially denied ever using the N-word, he now admits that he used the term on at least one occasion in the workplace. Even without Vess's admission, Cherry conducted two investigations that uncovered evidence to support the conclusion that Vess used racial slurs at work, including one incident Hamblin states occurred right before Vess went on FMLA leave.[7] Consequently, the district court correctly found that Vess failed to demonstrate that MTD's legitimate, non-discriminatory reason for terminating his employment was merely pretext for unlawful racial discrimination.[8]

---

[7] Vess also contends that "the district court should not have credited any defense witnesses' testimony about what they thought [he] had said, since the evidence of the movant can be believed even if uncontradicted, only when it 'comes from disinterested witnesses.'" *See Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 943 (5th Cir. 2015) ("While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." (citation omitted)). However, this court has specifically rejected Vess's contention that decisionmakers in employment cases are "interested witnesses" simply because of their positions. *See Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 898 (5th Cir. 2002) ("The definition of an interested witness cannot be so broad as to require us to disregard testimony from a company's agents regarding the company's reasons for discharging an employee." (citations omitted)); *see also Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 653 (5th Cir. 2004) ("Roberson provides no valid reason why Helms was an interested witness except to suggest that all decisionmakers are, by definition, interested witnesses. However, this is not our law . . . .").

[8] For the same reasons, Vess has failed to demonstrate that a "motivating factor" for MTD's termination of Vess was his race. *See supra* n.5 (citing *Rachid*; discussing mixed-motives alternative).

No. 18-60154

## IV. CONCLUSION

Based on the foregoing reasons, we AFFIRM the district court's judgment.