# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 21, 2011

No. 11-60102

Lyle W. Cayce
Clerk

CAROL L. VAUGHN,

Plaintiff – Appellant

v.

WOODFOREST BANK,

Defendant – Appellee

Appeal from the United States District Court
for the Northern District of Mississippi

Before JONES, Chief Judge, and DAVIS and DeMOSS, Circuit Judges.

HAROLD R. DeMOSS, JR., Circuit Judge:

On February 20, 2009, Carol L. Vaughn was fired from Woodforest Bank for "Unsatisfactory Conduct." Vaughn brought suit claiming racial discrimination under Title VII of the Civil Rights Act of 1964. Because Vaughn has presented a genuine issue of material fact concerning Woodforest's proffered reason for firing her, we reverse the district court's grant of summary judgment and remand for a trial on the merits.

## I.

On September 9, 2008, Carol L. Vaughn, a white woman, was hired by Woodforest Bank to be the assistant manager of the soon-to-be-opened Starkville, Mississippi branch. The Starkville branch, like dozens of others

No. 11-60102

throughout Mississippi and the southeastern United States, is located inside a Walmart store. During the weeks prior to the grand opening, Vaughn underwent management training and assisted Woodforest Regional Manager Misty Gaskamp in hiring four retail bankers (Rhonda Williams, Sade Gore-Burgin, Tocarra Key, and Kalliah Vickers), all black women. A New Branch Opening Team (NBOT) assisted in training employees and opening the branch. The NBOT included Linda Young, a black woman.

On the day the branch officially opened, Gaskamp fired the manager, a white male. Following an application and interview period in which Vaughn and Williams were candidates, Vaughn was promoted to Starkville branch manager in November or December 2008. Around the same time, after the NBOT had left the branch, Young returned to Starkville as the new assistant branch manager. As regional manager, Gaskamp lived in a different city in Mississippi but had ultimate supervisory responsibility for each of the Starkville branch employees and visited the branch about every three weeks.

Gaskamp approved three pay increases for Vaughn between September 2008 and February 2009 and gave Vaughn a generally positive performance evaluation on February 3, 2009. However, on February 20, 2009, Gaskamp fired Vaughn after conducting a brief "climate survey" of the Starkville branch and after a human resources representative conducted a brief follow-up investigation over the phone. Gaskamp checked the box "Unsatisfactory Conduct" on the termination form and gave the following written description as the specific reasons for firing Vaughn:

> During a branch visit conducted by [Gaskamp], employees indicated concerns regarding inappropriate comments made by Carol Vaughn [and concerns about] the environment. HR conducted an investigation of the employee complaints and determined that Carol Vaughn . . . made inappropriate comments in the presence of employees and customers that created a perception of racial discrimination and uncomfortable work environment due to lack of

confidentiality. As a member of the Woodforest National Bank management team, it is expected that Carol uphold the highest degree of professionalism.

In her deposition, Gaskamp testified that "we cannot talk about race in the workplace" and that "if you talk about race in the workplace it's racial discrimination." She also elaborated on Vaughn's "unsatisfactory conduct," stating that there were three "racial" occurrences that formed the basis of her decision to fire Vaughn. She described each occurrence as follows.

First, Vaughn told Williams as they watched television coverage of the Presidential Inauguration on January 20, 2009, that she wished the media would stop making President Obama's election a "black and white issue." As part of the same occurrence, Vaughn later told Williams and Gore-Burgin that her Sunday School class had prayed that nothing would ever happen to President Obama; that the class discussed his perceived religious conversion from Islam to Christianity; and that the class hoped if anything were to happen to him it would be done by "his own people" rather than "Americans."

Second, Vaughn returned from being away from the branch and discovered that human resources was investigating an incident where Gore-Burgin allegedly used the N-word at work during a phone conversation with her husband. Later that day Vaughn told one retail banker—Key—that employees should not use the N-word at work. She stated that she had been reprimanded by a former employer for using the N-word many years before, but that she no longer used the N-word.

Third, Vaughn and Gaskamp separately interviewed two applicants in late January 2009 for a retail banker position—Amanda (last name unknown), a black woman, and Racheal Burnett, a white woman. While talking with Gaskamp after the interviews, Vaughn said that she told Burnett that she was

No. 11-60102

not a "prejudiced person" and confirmed that Burnett could work with the team "as is." Gaskamp called Vaughn's comment "extremely unprofessional."

Other than what Gaskamp said in her deposition testimony and wrote on Vaughn's termination form, Woodforest did not document any employee or customer complaint against Vaughn or provide any other evidence of unsatisfactory conduct.

Shortly after Vaughn was fired, Woodforest promoted Young to the position of Starkville branch manager. This made the racial make-up of the branch one black manager, four black retail bankers, and one white retail banker.

Vaughn brought suit against Woodforest alleging racial discrimination under Title VII and now appeals the district court's decision granting summary judgment in favor of Woodforest.

## II.

We review a grant of summary judgment de novo, applying the same standard as the district court. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 308 (5th Cir. 2004). Summary judgment is proper if, viewing the facts in the light most favorable to Vaughn, Woodforest shows that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Id.*; *see also* FED. R. CIV. P. 56(a). In reviewing the evidence, we draw all reasonable inferences in Vaughn's favor and do not weigh the evidence or make credibility determinations. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). We also disregard any evidence favorable to Woodforest that the jury is not required to believe. *Id.*

## III.

Title VII makes it unlawful for an employer to fire an employee because of the employee's race. 42 U.S.C. § 2000e–2(a)(1). Moreover, an employer's action

4

No. 11-60102

will be found unlawful if the employee can demonstrate that her race was "a motivating factor" for her firing, even if the employer was also motivated by other lawful factors. *Id.* § 2000e–2(m). Vaughn alleges that her race—white—was either the real reason or a motivating factor for Woodforest's decision to fire her.

We apply the modified *McDonnell Douglas* approach in racial discrimination cases under Title VII. *Rachid*, 376 F.3d at 312; *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this approach, Vaughn must first make a prima facie case of racial discrimination. *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004). Then, Woodforest must articulate a legitimate, non-discriminatory reason for firing Vaughn. *Id.* If Woodforest provides a legitimate, non-discriminatory reason, the presumption of discrimination disappears. *Id.* Vaughn must then "offer sufficient evidence to create a genuine issue of material fact either (1) that [Woodforest's] reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that [Woodforest's] reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is [Vaughn's] protected characteristic (mixed-motives alternative)." *Rachid*, 376 F.3d at 312 (internal marks and citation omitted). We will conduct our analysis in the order described.

**A.**

To make a prima facie case Vaughn must show that (1) she is a member of a protected class, (2) she was qualified to be the Starkville branch manager, (3) she was fired, and (4) she was replaced by someone outside of her protected class. *See Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 426 (5th Cir. 2000). Woodforest does not contest that firing Vaughn because of her race would be contrary to Title VII and that Vaughn has made a prima facie case of racial discrimination.

No. 11-60102

**B.**

After Vaughn establishes a prima facie case, Woodforest must proffer a legitimate, non-discriminatory reason for firing Vaughn. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981); *Sandstad*, 309 F.3d at 897. It is a burden of production, not persuasion. *See Reeves*, 530 U.S. at 142. To meet its burden, Woodforest "must clearly set forth, through the introduction of admissible evidence, the reasons for [Vaughn's firing]." *Burdine*, 450 U.S. at 256. Woodforest is allowed to be incorrect in its assessment of the facts it relies on to justify firing Vaughn, but it is not allowed to have any discriminatory animus against her in making its decision. *See Sandstad*, 309 F.3d at 899; *Laxton v. Gap Inc.*, 333 F.3d 572, 579 (5th Cir. 2003).

To meet its burden of production, Woodforest submitted Vaughn's termination form and Gaskamp's deposition testimony. The termination form provided that Vaughn had "Unsatisfactory Conduct" which was described as "inappropriate comments in the presence of employees and customers that created a perception of racial discrimination and uncomfortable environment due to lack of confidentiality." And Gaskamp's deposition testimony provided examples of Vaughn's conduct that Woodforest deemed unsatisfactory: (1) statements Vaughn made on January 20, 2009, related to the Presidential Inauguration; (2) statements Vaughn made related to an incident where one retail banker overheard another retail banker allegedly use the N-word; and (3) statements Vaughn made in late January 2009 when describing her interview of Burnett to Gaskamp. Woodforest's stated non-discriminatory reasons are sufficient to meet its burden. *See Reeves*, 530 U.S. at 142.

**C.**

Once Woodforest produces a legitimate, non-discriminatory reason for firing Vaughn, the presumption of discrimination disappears and Vaughn "bears the ultimate burden of persuading the trier of fact by a preponderance of the

evidence that [Woodforest] intentionally discriminated against her because of her protected status." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001). To do so, Vaughn "must put forward evidence rebutting each of the nondiscriminatory reasons [Woodforest] articulates." *Id.* at 220. She may use two alternative methods to show that there is a genuine issue of material fact as to whether she was fired because of her race: pretext and mixed-motive. *Rachid*, 376 F.3d at 312.

**1.**

To establish pretext, Vaughn must show that Woodforest's "proffered explanation is false or 'unworthy of credence.'" *Laxton*, 333 F.3d at 578 (citing *Wallace*, 271 F.3d at 221).

Vaughn first attempts to show pretext by relying on a disparate treatment theory, pointing to three Woodforest employees as "comparators": Williams, Gore-Burgin, and Young. *See Perez v. Tex. Dep't of Crim. Justice, Institutional Div.*, 395 F.3d 206, 210 (5th Cir. 2004); *see also Wallace*, 271 F.3d at 221; *Smith v. Wal-Mart Stores (No. 471)*, 891 F.2d 1177, 1180 (5th Cir. 1990). Disparate treatment occurs where an employer treats one employee more harshly than other "similarly situated" employees for "nearly identical" conduct. *See Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009); *Wallace*, 271 F.3d at 221. However, the Woodforest employees to whom Vaughn points are not appropriate comparators. *See Lee*, 574 F.3d at 259–60 (providing that employees with different supervisors, different work responsibilities, or dissimilar violations are generally inappropriate comparators). Williams and Gore-Burgin are both retail bankers who reported to Vaughn. They had different job responsibilities than Vaughn, and they had dissimilar violation histories—Williams had attendance issues, wrote bad checks, and had attitude problems, while Gore-Burgin allegedly used the N-word at work during a phone conversation with her husband. And Young, even though she was an assistant

branch manager who reported indirectly to Gaskamp and could be considered "similarly situated," apparently never made racial, religious, or political comments in workplace conversations with subordinates. Vaughn's attempt to establish pretext through evidence of disparate treatment fails for lack of an appropriate comparator.

Vaughn also attempts to establish pretext by showing that Woodforest's proffered explanation is false or unworthy of credence. The inquiry is focused on whether Woodforest's explanation, accurate or not, is "the real reason" for firing Vaughn. *Laxton*, 333 F.3d at 579. Vaughn must produce evidence, viewed in the light most favorable to her, that would permit a jury to believe that Woodforest's proffered reason for firing her was not its true reason but simply pretext for a racially discriminatory reason. *Id.* Such rebuttal evidence, combined with the prima facie case, will suffice to create a genuine issue of material fact such that summary judgment is inappropriate. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 351 (5th Cir. 2005); *see also Reeves*, 530 U.S. at 148; *Rachid*, 376 F.3d at 307.

Vaughn offers the following evidence to rebut Gaskamp's portrayal of her allegedly "unsatisfactory" conduct and cast doubt on whether Woodforest's stated non-discriminatory reasons were its real reasons for firing her. According to Vaughn, she did not begin the conversations related to the Presidential Inauguration. Apparently, Williams initiated the conversation with Vaughn by expressing displeasure at President George W. Bush's presence at the Inauguration and directing Vaughn's attention to the television coverage of the event. Political and race-related conversations apparently continued among the branch employees throughout the day, during which Vaughn also stated her approval of Martin Luther King, Jr., and Jesse Jackson as potential presidents and her general preference for Christian candidates. Multiple employees

participated in these conversations, but only Williams later complained about Vaughn's comments.[1]

With respect to the N-word incident, Vaughn was not present when it occurred. Her comments in response to the incident were made later in the day to only one retail banker—Key—who did not find them offensive and who did not complain to Gaskamp or human resources. Moreover, her comments make clear that she was instructing retail bankers *not* to use the N-word at work.

Regarding the Burnett interview, Vaughn's version of events are different than Gaskamp's. Vaughn states that, following the interview, Gaskamp pressed her on whether she thought Burnett would "have a problem working with these girls" and that when Vaughn asked whether she meant because Burnett was white Gaskamp answered "yes." Vaughn says she never discussed the racial make-up of the branch with either candidate but she did tell both candidates that they would be interacting with customers of different races if they were hired. She says she told both candidates that she "got along with everybody" and asked them if they could get along with everybody as well, to which both candidates responded "yes." She says she never used the words "prejudiced," "black," or "white" in the interviews, and Gaskamp admits that in her deposition testimony she was not describing her conversation with Vaughn verbatim.

Vaughn also states that Gaskamp instructed her to offer Amanda, the black applicant, the retail banker job at a hourly rate one dollar higher than what they had discussed for Burnett, the white applicant. Only when Amanda declined the position did Gaskamp instruct Vaughn to offer the position to Burnett at the higher rate offered to Amanda. Had Amanda accepted the

---

[1] Several weeks before the Presidential Inauguration Williams had apparently questioned Vaughn in front of multiple black customers about who Vaughn had voted for in the presidential race. After trying to avoid answering the question, Vaughn eventually said that she voted for a "Christian man."

position, the racial make-up of the Starkville branch after February 20, 2009, would have been one black assistant manager (soon-to-be manager), five black retail bankers, and no white employees.

In relation to the "eight to ten" complaints Gaskamp says she received against Vaughn in the two months leading up to February 20, 2009, apparently all of them came from Williams and none of them was formally documented. *See Laxton*, 333 F.3d at 580–81 (noting the failure of the employer to document employee complaints and discuss workplace problems with the manager who was later fired and affirming a jury's finding of discrimination). The complaints began after Vaughn was promoted to branch manager and Young was promoted to assistant manager, each instead of Williams.

Additionally, Vaughn states that she called Gaskamp and human resources on multiple occasions in January and February 2009 to ask how she should discipline Williams for what she describes as insubordination—not following instructions, arriving late to work or not coming in at all, writing bad checks, and berating a fellow retail banker in front of customers. In response, she was told by Gaskamp that we need to "watch our Ps and Qs . . . because of what [Williams] would be capable of doing, her being the type of person that she is." Williams was never disciplined prior to February 20, 2009, but was later terminated by Woodforest due to conduct similar to that described by Vaughn.

Finally, Woodforest never expressed concern over any of Vaughn's conduct prior to the "climate survey" and investigation conducted on or around February 20, 2009, even though Woodforest was aware of each of the three "racial" occurrences well before February 20, 2009. It appears that Vaughn never received any warnings or reprimands for her conduct prior to February 20, 2009. The Presidential Inauguration conversation occurred on January 20, 2009, a month before Vaughn was fired, and no person other than Williams (whom Woodforest admits was a problem employee and who was later fired) took any

offense or complained to Gaskamp or human resources. The Burnett interview occurred in late January 2009, several weeks before Vaughn was fired, and Gaskamp was immediately made aware of the substance of the interview by Vaughn herself and expressed no concern at the time. And the N-word incident (date unknown) was handled by human resources immediately and Vaughn's behavior raised no concerns at that time and no employee complained about her related comments. Other than through Gaskamp's deposition testimony, Woodforest has not produced any evidence that it considers any mention of race in a workplace conversation to be, as Gaskamp called it, "racial discrimination" and "extremely unprofessional." *See Rachid*, 376 F.3d at 314 (finding a genuine issue of material fact as to whether one manager's description of the company's firing policy accurately described the company's policy).

This rebuttal evidence, when viewed as a whole and in the light most favorable to Vaughn, casts doubt on Woodforest's proffered non-discriminatory reasons for firing Vaughn and undermines its credibility. *See Reeves*, 530 U.S. at 147 ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive."). This evidence is sufficient to raise a genuine issue of material fact as to whether Woodforest's explanation is not the true reason for firing Vaughn but rather pretext for race discrimination. A jury could draw inferences from this evidence and reasonably conclude that Woodforest intentionally exaggerated its concern over Vaughn's "unsatisfactory" conduct and that her workplace comments were not the real reason she was fired. On these disputed facts, the district court "impermissibly substituted its judgment concerning the weight of the evidence for the jury's." *Id.* at 153. Summary judgment was inappropriate; a jury must decide whether Vaughn's race was the real reason she was fired.

No. 11-60102

## 2.

Because the prima facie and rebuttal evidence Vaughn has submitted is sufficient to raise a fact issue with respect to the pretext question, we need not decide whether it is also sufficient for a reasonable jury to conclude that Vaughn's race was "a motivating factor" in her being fired. 42 U.S.C. § 2000e–2(m).

## IV.

For the foregoing reasons, we REVERSE the district court's grant of summary judgment and REMAND the case to let a jury decide whether Woodforest discriminated against Vaughn because of her race.