**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 7, 2012

No. 12-40102
Summary Calendar

Lyle W. Cayce
Clerk

GINA DELPHIN,

Plaintiff-Appellant

v.

GRAYSON COUNTY, TEXAS,

Defendant-Appellee

Appeal from the United States District Court
for the Eastern District of Texas

Before SMITH, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:[*]

In this employment discrimination action, plaintiff Gina Delphin appeals from the district court's order granting summary judgment in favor of her former employer, Grayson County, Texas.  On appeal, Delphin contends she presented sufficient evidence to establish she was discharged due to her race in violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e–2(a)(1) (2012).  We affirm the judgment of the district court.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-40102

## I

Delphin, an at-will employee of the District Clerk's office, was discharged from her position by the newly elected District Clerk, Kelly Ashmore. Delphin is of Hispanic origin and was the only employee of Hispanic origin employed in the District Clerk's office at the time of her discharge. Delphin was replaced by a Caucasian applicant, Leslie Oliver. It is disputed when Ashmore offered Oliver the position, and it is disputed whether other applicants were considered for Delphin's position either before or after she left.

Ashmore claims she relieved Delphin of her duties because Delphin failed to meet with her prior to Ashmore's taking office as she had asked other employees to do, and as other employees had done. Delphin claims her discharge was racially motivated because she was the only Hispanic employee in the office at the time and because several Caucasian employees failed to report to Ashmore but were not discharged, which the County denies.

Delphin began working for the Grayson County District Clerk's office in October 1989 and was employed there on and off until October 2010. At several points during this time, Delphin transferred back and forth between the District Clerk's office and several other County offices. Most recently, she left the District Clerk's office to work at another County agency in 2009 and returned to the District Clerk's office in August 2010.

In 2010, Ashmore ran for the office of District Clerk, an elected position in Grayson County, Texas, and was sworn into office on October 1, 2010.

On or around March 2010, after it was clear Ashmore would be the new District Clerk, Ashmore sent an email to all the District Clerk employees at their work email addresses asking them to arrange an in-person meeting with her before she took office.[1] Ashmore wanted to meet with the employees so she

---

[1] Defendants did not produce this email. Ashmore stated that she sent it in her affidavit accompanying defendant's motion for summary judgment. That she sent this email

No. 12-40102

"could determine the positions each employee held, observe how they communicated and presented themselves, and determine whether they wanted to continue under the new administration," and generally to "have contact similar to an interview." It is undisputed that Delphin did not receive this email because at that time she was working in another County agency and did not rejoin the District Clerk's office until August 2010.

According to Ashmore, all other employees in the District Clerk's office arranged to meet with Ashmore before she took office. However, Ashmore did not require three Caucasian employees in the District Clerk's office to schedule an official meeting with her prior to her taking office. Those employees were Tammy Mueller, Kristi McClaran, and Lindsey Brown. It is undisputed that they had the same supervisor and similar work responsibilities as Delphin. Ashmore responded that Mueller, McClaran, and Brown all reached out to her before she took office such that she was satisfied they could work well together.

Specifically, Mueller approached Ashmore at a sporting event, introduced herself, discussed the position Mueller held in the District Clerk's office, and expressed her desire to continue working for Ashmore in the office. Mueller followed up the discussion with an email offering to meet again, but because they had already spoken, Ashmore did not schedule another meeting.

Ashmore explains that she had known McClaran for a number of years before she took office. After 2009, McClaran approached Ashmore at a social function and at the Grayson County Justice Center and they discussed McClaran's position at the District Clerk's office. McClaran expressed her desire to continue her position with Ashmore.

Finally, Ashmore had two face-to-face meetings with Brown. Before Ashmore won the primary election, she and Brown met and discussed Brown's

---

is not disputed.

No. 12-40102

position in the District Clerk's office, and Brown expressed her desire to work for Ashmore if she was elected. They met again by chance in front of the Justice Center and had a similar discussion. Brown also sent an email to Ashmore to inquire about setting up a third meeting, which Ashmore declined.

Ashmore had never met Delphin before Ashmore took office. Delphin states that she did not contact Ashmore because no one requested that she do so until Ashmore took office on October 1, 2010. Delphin did not receive the March 2010 email, but states that she was aware other employees had received it and that some of them had met with Ashmore before she took office.

Ashmore states that she was concerned because she had been contacted in one form or another by every District Clerk employee except for Delphin. She contacted the District Clerk's Human Resources Director, Andrea Mory, about her concerns in September of 2010, about one week before she took office. Ashmore called a few of Delphin's employment references to ask about her work habits and was told of a few concerns. Ashmore also states that she looked into Delphin's employment records at the District Clerk's office and learned that Delphin had been reprimanded in the past. Ashmore and Mory spoke again on September 30, 2010, the day before Ashmore was sworn in. Ashmore and Mory both state in their affidavits that in this second conversation, Ashmore stated her intention to discharge Delphin the next day, and that they discussed what formalities were required to discharge an at-will employee. In their affidavits submitted with the motion for summary judgment, Ashmore and Mory both averred they did not discuss Delphin's race.

The next day at Ashmore's swearing-in ceremony, Delphin introduced herself to Ashmore and attempted to speak with her. According to Delphin, Ashmore refused. Ashmore states that she was busy with administrative tasks and asked Delphin to see her in her office later that day.

4

No. 12-40102

Delphin went to Ashmore's office at around 5:30 p.m. that day. She handed Ashmore her resume, as other employees had told her they had done at their meetings with Ashmore. Delphin had gone through similar meetings with prior District Clerks, though they generally took place some time after the new Clerk's first day. Ashmore asked Delphin why she had not contacted her before, and Delphin responded that she had not contacted "an elected official before." Ashmore advised Delphin that her services were no longer needed. Delphin asked her if any other employee who had not met with her had been discharged, and Ashmore refused to answer. Delphin left the office and Ashmore completed the discharge paperwork.

## II

This Court reviews orders granting summary judgment *de novo* and applies the same standard applicable in the district court. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 308 (5th Cir. 2004). Summary judgment is proper if the movant shows, with reference to specific facts, that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). "On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007), internal quotation marks omitted). A court may only consider admissible evidence in ruling on a motion for summary judgment. FED. R. CIV. PROC. 56; *Mersch v. City of Dallas*, 207 F.3d 732, 734–35 (5th Cir. 2000).

## III

Title VII makes it unlawful for an employer to fire an employee because of the employee's race. 42 U.S.C. § 2000e–2(a)(1). An employer's action is

No. 12-40102

unlawful if race was "a motivating factor" for her firing, even if the employer was also motivated by other lawful factors. *Id.* § 2000e–2(m). This Court applies the modified *McDonnell Douglas* approach when considering whether summary judgment was appropriate in a Title VII racial discrimination case. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

The plaintiff carries the initial burden of establishing a prima facie case of racial discrimination, namely: (1) that she belongs to a racial minority; (2) that she performed her job satisfactorily; (3) that she suffered an adverse employment action; and (4) that similarly situated employees of a different race were treated more favorably or that she was replaced by someone outside of her protected class. *Vaughn*, 665 F.3d at 636; *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001).

If the plaintiff succeeds, the burden shifts to the defendant employer to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. If the defendant makes the requisite showing, the burden shifts back to the plaintiff to offer sufficient evidence to create a genuine issue of material fact either (1) that the proffered reason is a pretext for racial discrimination, or is "false or unworthy of credence," or (2) the reason, "while true, is only one of the reasons for its conduct, and another 'motivating factor'" is the plaintiff's race. *Vaughn*, 665 F.3d at 636 (quoting *Rachid*, 376 F.3d at 312); *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Bare allegations of racial discrimination are insufficient to create a genuine dispute as to a material fact. *Swanson v. Gen. Serv. Admin.*, 110 F.3d 1180, 1186 (5th Cir. 1997).

## A

No. 12-40102

Delphin bears the initial burden of establishing a prima facie case of employment discrimination. *See McDonnell Douglas*, 411 U.S. at 802. Delphin is Hispanic and submitted evidence that she was discharged for failing to meet with the incoming District Clerk even though three similarly situated white coworkers, Mueller, McClaran, and Brown, were not discharged for their failure to meet with the incoming Clerk. In addition, Delphin was replaced by a Caucasian applicant, Leslie Oliver. Other than Delphin's failure to contact Ashmore, Grayson County did not provide another reason for discharging her. The County did not claim her job performance was otherwise unsatisfactory. Therefore, Delphin made out a prima facie case of racial discrimination: that she belongs to a racial minority; that she performed her job satisfactorily; that she was discharged; and she established both that similarly situated, Caucasian employees were treated more favorably because they were not required to report officially to Ashmore, and that she was replaced by a Caucasian applicant. *See Okoye*, 245 F.3d at 512–13. Delphin carried her initial burden under the *McDonnell Douglas* test.

## B

The burden is next on Grayson County to articulate a legitimate, nondiscriminatory reason for its adverse employment action. *See McDonnell Douglas*, 411 U.S. at 802. Ashmore asserts she in fact required each District Clerk employee to meet with her in some capacity or another, including Mueller, McClaran, and Brown, and that Delphin was the only employee who did not do so before Ashmore took office. Ashmore was also concerned about the issues she identified in Delphin's employment record at the District Clerk's office and at her other County positions, which made Ashmore all the more concerned about meeting Delphin in person for an interview to determine whether she would be

kept on.[2]   Ashmore and Mory both averred that Ashmore formed at least a tentative intent to discharge Delphin once Ashmore took office, and that Ashmore did not know any information about Delphin's race until they met in person. Grayson County successfully articulated a legitimate, nondiscriminatory reason for Delphin's discharge.   Namely, the incoming District Clerk had legitimate concerns regarding Delphin's ability to work effectively under Ashmore once she took office and that Delphin singled herself out by not taking the initiative to contact Ashmore earlier.  This proffered reason is legitimate and facially nondiscriminatory.

## C

In the third step of the *McDonnell Douglas* test, Delphin must offer sufficient evidence to create a genuine issue of material fact either (1) that the proffered reason is not true, but rather a pretext for racial discrimination, or (2) the reason, "while true, is only one of the reasons for its conduct, and another 'motivating factor'" is the plaintiff's race.  *See Vaughn*, 665 F.3d at 636 (quoting *Rachid*, 376 F.3d at 312).   Delphin failed to show that Ashmore's proffered reason was pretextual.  Delphin contends that Ashmore and Mory's proffered explanation lacks credibility because it is calculated to avoid liability, but Delphin does not offer any evidence to contradict their statements.  Delphin

---

[2] In her opening brief, Delphin argues, without explaining, that various statements Ashmore refers to in her affidavit and elsewhere are hearsay and therefore may not be relied upon when reviewing the order granting summary judgment.  However, Delphin does not explain in what respect these statements are hearsay—i.e., that they are offered for the truth of the matter asserted.  *See* FED. R. EVID. 801(c).  To the extent we consider the parties' proffered out-of-court statements by nonparty witnesses, we do not rely on them for the truth of the matter asserted but for, e.g., their effect on the hearer, such as to establish Ashmore's state of mind leading up to her decision to discharge Delphin.  *See id.*; *see also* FED. R. CIV. PROC. 56(c)(4) (providing that affidavits shall set forth facts that would be admissible in evidence);  *Mersch*, 207 F.3d at 734–35 (noting only admissible evidence may be considered when ruling on a motion for summary judgment).

likewise did not submit evidence that Ashmore decided to discharge Delphin only after she learned Delphin's race. Without such evidence, any inference that Ashmore's reason was a pretext is merely speculative and does not give rise to a genuine issue of material fact. *See Swanson*, 110 F.3d at 1186 (noting that bare allegations of racial discrimination are too speculative to create a jury question).

Nor did Delphin submit evidence that would show race was "another motivating factor" in Ashmore's decision to discharge her. *See Vaughn*, 665 F.3d at 636. The evidence the parties submitted shows there may have been a misunderstanding between Ashmore and Delphin regarding Ashmore's expectations. It is undisputed that Delphin did not receive the email in which Ashmore requested that everyone "contact" her, and the record does not reflect that Ashmore asked Delphin to contact her before October 1, 2010. However, it is also undisputed that Ashmore had concerns about retaining Delphin in her employ before meeting Delphin, even if this concern was at least in part attributed to a misunderstanding. Ultimately, "[t]he question is not whether [the County] made an erroneous decision; it is whether the decision was made with discriminatory motive." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995). Without specific evidence that Delphin's discharge was racially motivated, Grayson County is entitled to summary judgment in its favor.

## IV

Accordingly, the judgment of the district court is AFFIRMED.