# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-60961

United States Court of Appeals
Fifth Circuit

**FILED**
June 11, 2014

Lyle W. Cayce
Clerk

GEORGE DULIN,

Plaintiff–Appellee

v.

BOARD OF COMMISSIONERS OF THE GREENWOOD LEFLORE
HOSPITAL,

Defendant–Appellant

Appeal from the United States District Court
for the District of Northern Mississippi
USDC No. 4:07-CV-194

Before BARKSDALE, PRADO, and HAYNES, Circuit Judges.

PER CURIAM:*

Attorney George Dulin ("Dulin") brought a lawsuit under 42 U.S.C.
§ 1981 against the Board of Commissioners of Greenwood Leflore Hospital
("the Board") claiming that the Board discriminated on the basis of race when
it voted to replace him as attorney for the Board. Dulin first presented his case
at trial in 2010, and, at the close of Dulin's case-in-chief, the district court
granted the Board's motion for judgment as a matter of law. On appeal, this

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 12-60961

Court initially affirmed; then, upon Dulin's petition for rehearing, it withdrew its earlier opinion, reversed the district court's grant of JMOL, and remanded the case for a new trial. *Dulin v. Bd. of Comm'rs of Greenwood Leflore Hosp.* ("*Dulin I*"), 646 F.3d 232 (5th Cir.), *reh'g granted*, 657 F.3d 251 (5th Cir. 2011) (per curiam). The case was retried in April 2012. The jury returned a verdict for Dulin and awarded $12,000 in back pay and $70,000 in compensatory damages. The Board appeals the district court's final judgment in Dulin's favor. We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In August 2006, the Board unanimously voted to terminate the contract of its attorney, Dulin, a white man. Dulin had served as Board attorney for twenty-four years. In January 2007, the Board hired W. M. Sanders, a black woman, as his replacement.

At the time of these events, the Board's members were Sammy Foster, the chair when the Board fired Dulin; Gladys Flaggs, the chair when the Board hired Sanders in 2007; Walter Parker; Alex Malouf; and Bryan Waldrop. Flaggs, Parker, and Foster are black. Malouf and Waldrop are white. Three of the Board's members—Flaggs, Parker, and Waldrop—were appointed by the Leflore County Board of Supervisors; two—Foster and Malouf—were appointed by the Greenwood City Council.

In August 2005, then-chairman of the Board Foster and Board member Malouf—accompanied by then-Hospital administrator Jerry Adams—attended a meeting of the Greenwood Voters' League ("the League"). At the meeting, League members advocated for the Board to fire Dulin and hire a black attorney. The League is a local political organization that advocates for civil rights. Its members include David Jordan, Robert Moore, and Willie Perkins,

2

No. 12-60961

who are respectively a Mississippi state senator and member of the Greenwood City Council, President of the Leflore County Board of Supervisors, and an attorney and President of the local NAACP chapter. Bob Darden, a local newspaper reporter, attended the meeting and wrote an article about the events of the meeting, which was published in the Greenwood newspaper the following day.

Dulin sued the Board claiming that the Board had engaged in race discrimination in violation of 42 U.S.C. § 1981. Dulin alleged: there were no prior complaints about his job performance; the three black Board members—Parker, Flaggs, and Foster—were motivated by race in deciding to replace him; the two white Board members—Malouf and Waldrop—went along with the decision; three black members of the League—Moore, Perkins, and Jordan—pressured the Board to replace him with a black attorney; and Moore influenced the Board by meeting with Board members, urging them to replace Dulin, and falsely accusing Dulin of sleeping at Board meetings.

Dulin's § 1981 claim against the Board proceeded to a jury trial in January 2010. Dulin presented his own testimony, the testimony of the three black members of the Board, and that of Darden, Adams, Moore, and Dulin's wife. At the close of Dulin's case-in-chief, the Board moved for judgment as a matter of law under Federal Rule of Civil Procedure 50. The court granted the motion, finding that Dulin's case did not present sufficient evidence that: (1) Moore in fact influenced the Board's decision; (2) Board members relied upon or yielded to Moore's influence in their decision; (3) Foster, who made remarks about eventually replacing Dulin with a black attorney at the League meeting, influenced a quorum of the Board to replace Dulin; and (4) the Board members' non-discriminatory reasons for discharging Dulin were pretext.

No. 12-60961

On appeal, this Court initially affirmed the district court's grant of judgment. The Court honed the issue of sufficiency of the evidence down to the issue of pretext:

> It is undisputed that Dulin presented a prima facie case of racial discrimination and that the Board asserted a nondiscriminatory reason for terminating his contract. . . . It was Dulin's burden to prove that the Board intentionally discriminated against him based on his race by showing that the Board's nondiscriminatory reason was false or by showing that, while the nondiscriminatory reason was true, race was another motivating factor in his termination.

*Dulin I*, 646 F.3d at 236–37.

In a detailed dissent, Judge Barksdale contended that there was sufficient circumstantial evidence for a reasonable juror to find for Dulin. In particular, the dissent remarked on five pieces of evidence:

> (1) Foster's and League members' remarks at the 2005 League meeting about replacing Dulin with a black attorney, including League members' influence over the Board's decision; (2) lack of complaints about Dulin's performance; (3) the Board's comments at its 2006 meeting; (4) no objective criteria for selecting Sanders; and (5) no white attorney being considered when Sanders was selected.

*Id.* at 246 (Barksdale, J., dissenting). From these pieces of evidence and others, the dissent concluded that there were triable issues. First, a jury might conclude that Moore and other League members had influenced the Board members in their decision under a "cat's paw" theory of discrimination. Second, a jury might conclude that the Board members' explanations were pretext for discrimination, given the lack of complaints regarding Dulin's performance. Third, a jury might conclude that the Board's supposed impartial replacement process was pretext because of the Board's lack of knowledge

4

about Sanders's qualifications and evidence that there were no objective criteria for the position.

On petition for rehearing, this Court withdrew its earlier opinion, reversed the district court's grant of judgment as a matter of law, and remanded the case for a new trial. *Dulin v. Bd. of Comm'rs of Greenwood Leflore Hosp.* ("*Dulin II*"), 657 F.3d 251, 251–52 (5th Cir. 2011). The Court reconsidered its judgment in light of *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 148 (2000), and recited *Reeves*' holding that a "'plaintiff's prima facie case [of discrimination], combined with sufficient evidence to find that the employer's asserted justification [for termination] is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.'" *Dulin II*, 657 F.3d at 251 (alteration in original) (quoting *Reeves,* 530 U.S. at 148). The Court then concluded without further elaboration that "there is a triable issue of fact that requires a jury to decide fact and credibility issues." *Id.* (citation omitted).

On remand, the case again went to trial. At trial the Board orally moved for JMOL at the end of Dulin's case-in-chief. The district court denied the motion. A jury then returned a verdict finding that race was a motivating factor in the Board's decision to terminate Dulin's contract and awarded Dulin $12,000 in back pay and $70,000 in compensatory damages. Following entry of judgment, the Board renewed its motion for judgment as a matter of law, and also moved in the alternative for a new trial, an amended judgment, and remittitur. The district court denied the motions. The Board filed a timely notice of appeal of the judgment and the denial of these motions.

No. 12-60961

## II.  DISCUSSION

On this second appeal, the Board purports to raise only one issue: whether the jury verdict is supported by the evidence.  In fact, the brief also argues that the denial of the motions for a new trial and remittitur were error.  We address these in turn.

### A.    Judgment as a Matter of Law[1]

#### 1. Standard of Review

This Court reviews a denial of a motion for judgment as a matter of law de novo.  *Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 395 (5th Cir. 2013).  Rule 50 provides that a court may only render judgment as a matter of law where "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [nonmovant] on that issue."  Fed. R. Civ. P. 50(a); *accord Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 480 (5th Cir. 2007).  A motion for judgment as a matter of law made after the jury has returned a verdict is a challenge to the legal sufficiency of the evidence.  *Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 296 (5th Cir. 2005).  In ruling on a motion for judgment as a matter of law, the court reviews all of the evidence in the record and must draw all reasonable inferences in favor of the nonmoving party.  *Reeves*, 530 U.S. at 150–51 (citing, *inter alia*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254

---

[1] Dulin argues that the Board failed to properly renew its objection at the close of evidence and therefore waived the issue.  But following the 2006 amendment to Rule 50, a party filing a post-trial Rule 50(b) motion no longer has to meet this condition precedent.  *See* Fed. R. Civ. P. 50(a) ("A motion for judgment as a matter of law may be made *at any time* before the case is submitted to the jury." (emphasis added)); Fed. R. Civ. P. 50(a) advisory committee's note ("Rule 50(b) is amended to permit renewal of any Rule 50(a) motion for judgment as a matter of law, deleting the requirement that a motion be made at the close of all the evidence."); *see also* 9B C. Wright et al., *Federal Practice & Procedure* § 2537 (3d ed. 2013).  The Board complied with all other procedural requirements.  It moved for judgment as a matter of law during trial,  and timely filed its post-judgment motion within twenty eight days of entry of judgment.

(1986)).  The court, however, may not make credibility determinations or weigh the evidence, as those are solely functions of the jury.  *Id.*

### 2. *Law-of-the-Case Doctrine*

Dulin urges the panel to forego analysis of the evidence on the ground that this Court has already held the evidence sufficient in *Dulin II*, invoking the law-of-the-case doctrine.

The law-of-the-case doctrine provides that "an issue of law or fact decided on appeal may not be reexamined . . . by the appellate court on a subsequent appeal."  *Gene & Gene, L.L.C. v. BioPay, L.L.C.*, 624 F.3d 698, 702 (5th Cir. 2010) (citation and internal quotation marks omitted).  The doctrine is "based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter."  *United States v. U.S. Smelting Ref. & Mining Co.*, 339 U.S. 186, 198 (1950).  For the doctrine to apply, the issues need not have been explicitly decided; the doctrine also applies to those issues decided by "necessary implication":

> In other words, even when issues have not been expressly addressed in a prior decision, if those matters were "fully briefed to the appellate court and . . . necessary predicates to the [court's] ability to address the issue or issues specifically discussed, [those issues] are deemed to have been decided tacitly or implicitly, and their disposition is law of the case."

*Alpha/Omega Ins. Servs., Inc. v. Prudential Ins. Co. of Am.*, 272 F.3d 276, 279 (5th Cir. 2001) (alterations and omission in original) (quoting *In re Felt,* 255 F.3d 220, 225 (5th Cir. 2001)).

A prior panel of this Court has already held in this case that "there is a triable issue of fact that requires a jury to decide fact and credibility issues." *Dulin II*, 657 F.3d at 251.  Yet we cannot hold that the *Dulin II* Court's statement that "there is a triable issue of fact" is the law of the case, because

*Dulin II* does not explain *which* evidence presented at the first trial presented a triable issue.  We cannot say what the *Dulin II* opinion "necessar[ily] impl[ied]," *see Alpha/Omega*, 272 F.3d at 279, when it held that there was "a triable issue of fact that requires a jury to decide fact and credibility issues," *Dulin II*, 657 F.3d at 251.  Therefore, we proceed to analyze the sufficiency of the evidence de novo.

### 3.  *Sufficiency of the Evidence*

Employment discrimination claims brought under 42 U.S.C. § 1981 are analyzed under the same framework applicable to claims arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.  *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999).  This circuit applies a modified burden-shifting framework based on *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), to Title VII claims.  *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011).  This framework requires a plaintiff alleging discrimination to establish a prima facie case by demonstrating that he was: (1) a member of a protected class; (2) qualified for the position in question; (3) the subject of an adverse employment action; and (4) replaced by someone outside the protected class or otherwise discharged because of his membership in the protected class.  *Id*.

Once the plaintiff establishes a prima facie case, an inference of discrimination arises, and the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason" for its decision to terminate the plaintiff.  *Id*.  This is a burden "of production, not persuasion."  *Reeves*, 530 U.S. at 142.  If the employer satisfies this burden, the complainant has the "opportunity to prove by a preponderance of the evidence" that the defendant's reason is not true, but is instead a pretext for discrimination (pretext

alternative) or that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive alternative). *Id.* (addressing pretext alternative in the context of a Rule 50 motion); *Vaughn*, 665 F.3d at 636 (recognizing pretext and mixed-motive theories). These alternatives are, however, "simply [] form[s] of circumstantial evidence that [are] probative of intentional discrimination." *Reeves*, 530 U.S. at 147. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

At his second trial, Dulin presented testimony from himself, Robert Darden, David Jordan, Willie Perkins, and Robert Moore. The Board presented testimony from Walter Parker, Gladys Flaggs, Alex Malouf, Sammy Foster, and Brian Waldrup. Based on the evidence presented—in particular, credible testimony about the statements Moore and Perkins made to the Board members at the meeting—Dulin presented sufficient circumstantial evidence of a racially discriminatory motive and evidence from which the jury could infer that members of the League tried to influence Foster's remarks at the Board meeting. Second, Dulin presented sufficient testimony about the positions and relationships between members of the Board and Moore. Those relationships and positions were evidence that suggested the influence Moore and others with racial animus could exert on the Board such that the Board would be the "cat's paw" of the actor with discriminatory intent. Third, the Board's comments at its own 2006 meeting could be evidence of pretext. Fourth, the absence of any earlier criticism of Dulin's work as Board attorney and the manner in which the Board selected Dulin's replacement would suggest to a

reasonable juror that the Board's claimed reason for terminating Dulin was pretext. Consequently, we hold that the evidence was sufficient to survive a motion for judgment as a matter of law for the Board.

## B.    Amending Judgment & Remittitur

In addition, the Board appeals the denial of its motion for a new trial or amended judgment under Rule 59. The Board also seeks to vacate the jury's $70,000 award for emotional distress damages to Dulin. The Board makes two arguments: first, that a new trial is required because the jury was improperly guided by passion as a result of plaintiff's counsel's use of improper closing arguments; second, that the award of mental anguish damages had no evidentiary support and was the result of the jury's improper passion. We hold that the district court did not err in denying the motion for a new trial.

This Court reviews a denial of motions for new trial, amended judgment, and remittitur for abuse of discretion. *King v. Ames*, 179 F.3d 370, 377 n.8 (5th Cir. 1999).

### *1. Closing Argument*

A motion for a new trial premised on improper arguments by counsel "should only be granted when improper closing argument irreparably prejudices a jury verdict or if a jury fails to follow instructions." *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 509 (5th Cir. 2012) (citations and internal quotation marks omitted). "To justify a reversal based on improper comments of counsel, the conduct must be such as to gravely impair the calm and dispassionate consideration of the case by the jury." *Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 585 (5th Cir. 1985) (citation omitted). Therefore, closing argument must go far beyond the bounds of accepted advocacy before a court

must grant a new trial.  *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 284 (5th Cir. 1975).

Here, the closing argument was well within the bounds of proper argument.  The Board suggests that Plaintiff's counsel violated the "Golden Rule" during closing arguments by stating that the Board members do not care about Dulin or the proceedings because defendant's corporate representative was not present during closing arguments.  Dulin's closing arguments—to the extent they were improper at all—do not warrant a new trial.  The Board points to no circuit authority suggesting a comparable situation was held improper.  In fact, even if this were an example of an improper Golden Rule argument— i.e., asking the jurors to stand in the shoes of a party—this Circuit has held such improper arguments still do not necessarily require a new trial.  *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 180 (5th Cir. 2005).  Therefore, the Board's argument is unavailing, and we affirm the district court's denial of the motion for a new trial.

### 2. Damages

We apply a strong presumption in favor of affirming jury awards of damages, and may overturn a damage award only upon a clear showing of excessiveness or upon a showing that the jury was influenced by passion or prejudice.  *See Eiland v. Westinghouse Elec. Corp.,* 58 F.3d 176, 183 (5th Cir. 1995) (citing *Westbrook v. Gen. Tire & Rubber Co.,* 754 F.2d 1233, 1241 (5th Cir. 1985)).  This Court is especially disinclined—"chary"—to disturb a jury's assessment of damages for grief and emotional distress.  *Caldarera v. E. Airlines, Inc.*, 705 F.2d 778, 783–84 (5th Cir. 1983).

"[T]o merit any award greater than nominal damages, emotional distress damages must 'be supported by competent evidence concerning the injury.'"

11

*Giles v. Gen. Elec. Co.*, 245 F.3d 474, 488 (5th Cir. 2001) (quoting *Brady v. Fort Bend Cnty.*, 145 F.3d 691, 718 (5th Cir. 1998)).   Competent evidence of emotional distress requires some "specificity with respect to the alleged injury." *Id.*  Thus, "[d]amages for emotional distress may be appropriate . . . where 'the plaintiff suffers sleeplessness, anxiety, stress, marital problems, and humiliation.'" *Id.* (quoting *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998)).  And while "[i]n certain cases a plaintiff's testimony alone may be sufficient proof of mental damages," we must "'scrupulously analyze'" such claims. *Id.*  (quoting *Brady*, 145 F.3d at 719).

Here, Dulin presented enough evidence to sustain the jury's award of damages for his emotional distress.  Dulin testified that he had held the position as Board attorney for over twenty-four years and considered his relationship with the employees of the hospital to be "like family."  He testified that the Board was an important part of his law practice, and that being replaced because of his race was "humiliating," a "shock," and a "stressful situation."  Dulin also testified that the loss of his position caused him to close down his Greenwood law practice sooner than he had intended.

Our survey of emotional distress awards in similar cases in this circuit further supports our view.  Such factually similar cases "'provide an objective frame of reference, but they do not control our assessment of individual circumstances.'"  *Moore v. M/V ANGELA*, 353 F.3d 376, 384 (5th Cir. 2003) (quoting *Wheat v. United States*, 860 F.2d 1256, 1259–60 (5th Cir. 1988)).  Under this non-binding rule of thumb, sometimes called the "maximum recovery rule," "we remit damage awards that we find excessive to the maximum amount the jury could have awarded." *Learmonth v. Sears, Roebuck*

*& Co.*, 631 F.3d 724, 738 (5th Cir. 2011) (citation and internal quotation marks omitted).

This Court has found that similar evidence supported an emotional distress damage award greater than $70,000. For example, in *Giles*, we remitted an award of $300,000 to $150,000 where the plaintiff in an employment discrimination action testified that following his termination, "he has had trouble sleeping, suffered headaches and marital difficulties, and lost the prestige and social connections associated with his position" and his wife testified that plaintiff was "despondent, depressed, down and absolutely utterly discouraged about not being able to come back to work." 245 F.3d at 488. Although, unlike at the first trial, Dulin did not present his wife's testimony at the second trial and courts weigh such uncorroborated statements with skepticism, *see id.*, we note that the jury was able to observe Dulin's demeanor first hand as he testified to the circumstances surrounding his termination and his emotional distress, *see Caldarera,* 705 F.2d at 782 ("Our review is not only hindsight, but is based on a written record with no ability to assess the impact of the statement on the jury or to sense the atmosphere of the courtroom."). In conclusion, we hold that the damages award is not clearly excessive.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of the Board's motion for judgment as a matter of law and its denial of the Board's motion to amend judgment.