# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-60087
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
July 29, 2015

Lyle W. Cayce
Clerk

EDWARD STEWART,

      Plaintiff - Appellant

v.

TREASURE BAY CASINO,

      Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:12-CV-197

Before KING, JOLLY, and HAYNES, Circuit Judges.

PER CURIAM:*

      Plaintiff–Appellant Edward Stewart appeals the district court's order granting summary judgment for Defendant–Appellee Treasure Bay Casino. Stewart argues that the district court erred by finding he was unable to show that Treasure Bay's proffered legitimate, non-discriminatory reason for his

---

      * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

termination was pretext for unlawful racial discrimination.  For the following reasons, we AFFIRM the judgment of the district court.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Edward Stewart was hired by Treasure Bay Casino to serve as a Security Officer on July 4, 2008.  He was promoted to the position of Security Lead Officer on August 11, 2008.  Treasure Bay's Security Director, Kenneth Key, was responsible for Stewart's promotion.  Treasure Bay's Human Resources Director, Joe Thornton, also played a role in the promotion.  For the first two years of his employment, Stewart received positive performance evaluations.

However, beginning in February 2010, Stewart was subject to a number of disciplinary actions.  On approximately February 17, 2010, Stewart received an Action Notice for "direct[ing] . . . subordinates to ignore established policy by telling them not to give . . . requesting employees" escorts to Treasure Bay's parking lot.  This Action Notice was classified as a "Counseling Notice," which is the first step of Treasure Bay's progressive discipline process.[1]  On May 12, 2010, Stewart received a second Action Notice for instructing the security officers under his supervision "not to administer [an] ID check" requested by Treasure Bay's surveillance department.  This Action Notice was classified as a "Written Warning," which is the second step of Treasure Bay's progressive discipline process.  Additionally, a written letter from Key was placed in Stewart's personnel file, with the subject line "Disorderly Conduct."  Key's letter explained that on December 28, 2010, Stewart entered the security supervisor's office in an intoxicated state.  The letter also noted that on December 29, 2010, Stewart was asked to leave the Treasure Bay premises

---

[1] Treasure Bay's Employee Handbook makes clear that employee discipline can begin at any step of the progressive discipline process.  It further states that "Treasure Bay is not bound to progressive discipline in all cases."

because he was intoxicated.  The letter prohibited Stewart from being present at Treasure Bay after working hours.

On December 31, 2010, Stewart was issued another Action Notice, classified as a "Final Warning," which is the third step of Treasure Bay's progressive discipline process.  The Action Notice explained that there had been "multiple instances of Security Lead Edward Stewart conducting himself in an unprofessional manner."  It noted that "[a]ny further violations of [Treasure Bay's] procedures could lead to further corrective actions including . . . separation from the company."  Underlying this Action Notice were multiple reports of Stewart's misconduct.  For example, on approximately December 27, 2010, Brian Salas, a security officer who reported to Stewart, sent a letter to Key expressing his "grave concerns . . . for the unfair and inconsistent treatment," that Stewart had subjected him to.  Salas reported that Stewart repeatedly mispronounced his last name and when asked to pronounce it correctly, Stewart said "this is America and I'll say your name [however] I want."  Key also received an email from April Pritt, another security officer under Stewart's supervision, who complained that Stewart "intentionally goes out of his way to be rude," and that she "did nothing to deserve [this treatment] except decline his offer to go on a date."  Pritt also noted that Stewart "treats Brian Salas . . . terribly."  Pritt concluded by commenting that Stewart is "extremely rude, arrogant, and not a pleasure to work for at all," and that he "has made us . . . hate coming to work."  A few months later, Key received additional complaints about Stewart from both Salas and Pritt.  Finally, on March 30, 2011, Key received a letter from Treasure Bay employee David Sloan, which stated that Sloan felt that Stewart "is very unprofessional and spends more time flexing his arms than worrying about protecting this [c]asino."  Sloan reported that Stewart treated Salas

poorly and that Stewart had previously stated that he thought he could do a better job as security director.

As a result of these complaints, Key decided to transfer Stewart to a different shift, which would have allowed Stewart to benefit from the supervision of a different security supervisor. Key intended for the shift change to take effect at the beginning of May 2011. However, before the shift change could take place, Key received reports of another altercation between Stewart and Salas. Pritt reported that on April 19, 2011, Salas asked Stewart to pronounce his name correctly during a security briefing. Pritt explained that after Salas made this request, Stewart told Salas "to 'get out and go talk to the wall.'" According to Pritt, Stewart then "slammed the door in [Salas'] face." Pritt's characterization of the incident was corroborated by Elizabeth Bieller and Scottie Loree, who both served as Treasure Bay security officers.

After discussing Stewart's behavior with Thornton and Treasure Bay Chief Operating Officer Susan Varnes, Thornton determined that Stewart's conduct had violated Treasure Bay's Crewmember Handbook. He further concluded that Stewart should be terminated because he had repeatedly engaged in unprofessional conduct. Stewart was terminated on April 22, 2011. Varnes made the ultimate termination decision.

On June 20, 2012, Stewart filed a pro se complaint in the United States District Court for the Southern District of Mississippi and alleged that he had been "retaliated and discriminated against because of [his] race." He purported to bring claims against "Thornton (Treasure Bay)." The district court granted Thornton's motion to dismiss; however, it construed Stewart's complaint to also allege claims against Treasure Bay. Stewart subsequently withdrew his retaliation claim against Treasure Bay. On January 1, 2015, the

district granted Treasure Bay's motion for summary judgment on Stewart's remaining Title VII discrimination claim. Stewart's timely appeal followed.[2]

## II.    STANDARD OF REVIEW

"We review a district court's grant of summary judgment de novo, applying the same standard on appeal as that applied below." *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute as to a material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Rogers*, 755 F.3d at 350 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). We construe "all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (internal quotation marks omitted). Nevertheless, a summary judgment motion may not be defeated by "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (internal quotation marks omitted).

## III.    DISCUSSION

It is "unlawful for an employer to fire an employee because of the employee's race." *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011) (citing 42 U.S.C. § 2000e–2(a)(1)). This court applies "the modified *McDonnell Douglas* approach in racial discrimination cases under Title VII." *Id.* (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). In order to survive

---

[2] Stewart only challenges the district court's grant of summary judgment on his Title VII discrimination claim against Treasure Bay. He does not challenge the district court's decision to grant Thornton's motion to dismiss or the district court's finding that he had withdrawn his retaliation claim against Treasure Bay.

summary judgment under that approach, the employee "must first present evidence of a prima facie case of discrimination." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004). To establish a prima facie case, Stewart must show: (1) that he is a member of a protected class; (2) that he was qualified to be a lead security officer; (3) that he was fired; and (4) that he was replaced by someone outside of his protected class. *Vaughn*, 665 F.3d at 636. If a prima facie case is established, the burden shifts to Treasure Bay to articulate a legitimate, non-discriminatory reason for firing Stewart. *Id.*; *see also McDonnell Douglas*, 411 U.S. at 802. Once Treasure Bay presents "a legitimate rationale for its employment action, the inference of discrimination disappears and the plaintiff must present evidence that the employer's proffered reason was mere pretext for racial discrimination." *Davis*, 383 F.3d at 317. In order to establish pretext, Stewart must show that Treasure Bay's proffered reason for his termination "is false or unworthy of credence." *Vaughn*, 665 F.3d at 637 (internal quotation marks omitted).

Here, the district court, assuming that Stewart was able to establish a prima facie case, determined that Stewart failed to establish a genuine issue of material fact that Treasure Bay's legitimate, non-discriminatory reason for his termination was pretextual. We agree. The record establishes that Treasure Bay received numerous complaints, from a number of different Treasure Bay employees, about Stewart's poor job performance. The record also reflects that Treasure Bay relied on these complaints and Stewart's previous Action Notices to determine that he had engaged in unprofessional conduct. Clearly, Treasure Bay had a legitimate, non-discriminatory reason for Stewart's termination.

Stewart argues that Treasure Bay's proffered explanation was pretext for unlawful race discrimination. However, nothing in the record suggests Treasure Bay's explanation was prextual, such as evidence that he was subject

6

to disparate treatment, *Vaughn*, 665 F.3d at 637, or evidence that Treasure Bay's explanation was not "the real reason" for Stewart's termination, *id.* (internal quotation marks omitted). Importantly, Stewart does not challenge the record evidence which supports Treasure Bay's position that he was subject to numerous reports of misconduct. Stewart contends that Treasure Bay's failure to interview him and other African-American employees during its investigation is evidence of pretext. However, Stewart has produced no evidence that Treasure Bay's failure to interview other African Americans was anything but coincidental. Furthermore, we have never required an employer's investigation to be perfect; it must only be non-discriminatory. *See Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005). Moreover, the record shows that Treasure Bay repeatedly discussed with Stewart the complaints about his conduct throughout the duration of his employment, albeit not immediately before he was terminated. Because Stewart has provided no evidence other than his own conclusory statements that Treasure Bay's reason for his termination was pretextual, the district court's grant of summary judgment for Treasure Bay was proper. *See Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010) ("[An employee's] assertion of innocence alone does not create a factual issue as to the falsity of [the employer's] proffered reason for terminating him.").

7

No. 15-60087

## IV.    CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.