**Opinion issued February 14, 2013**



In The

# Court of Appeals

For The

# First District of Texas

_____

NO. 01-12-00355-CV

_____

**EMANUEL WALCOTT, Appellant**

**V.**

**TEXAS SOUTHERN UNIVERSITY, Appellee**

---

**On Appeal from the 129th District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-36758**

---

**MEMORANDUM OPINION**

Emanuel Walcott sued his former employer Texas Southern University pursuant to the Texas Commission on Human Rights Act. *See* TEX. LAB. CODE ANN. §§ 21.051, 21.055, 21.254 (Vernon 2006). Walcott alleged that the

university discriminated against him based on his national origin when it failed to promote him and when it terminated him. Walcott also alleged that the university retaliated against him for reporting the discriminatory practices.

The trial court granted Texas Southern University's motion for summary judgment on Walcott's discrimination claim and granted the university's plea to the jurisdiction with regard to his retaliation claim. In two issues, appellant challenges the trial court's judgment, asserting that (1) the trial court erred by granting summary judgment on his national origin discrimination claims and (2) the trial court erred by granting the plea to the jurisdiction on appellant's retaliation claim.

We affirm.

## Background

Emanuel Walcott was born in Panama and immigrated to the United States in 1983. Texas Southern University (TSU) hired Walcott to be Manager of Custodial Services on December 1, 2008. Walcott had been invited to apply for the position by TSU employee, Diane Nicholson-Jones, who had known Walcott for 10 years. Nicholson-Jones helped Walcott fill out the paperwork for the position. After interviewing five other candidates, Nicholson-Jones hired Walcott. As stated in the job posting, Walcott's duties included managing and coordinating the day-to-day custodial operations of maintaining the interior of the campus

2

buildings. The duties also included supervising, organizing, and coordinating the work and activities of assigned staff in accordance with TSU's standards and the customer's needs.

Nicholson-Jones was Walcott's supervisor. On January 23, 2009, Darrell Bunch began working at TSU as Executive Director of Buildings and Grounds. In that position, Bunch served as Nicholson-Jones's supervisor.

On March 12, 2009, Bunch posted the position of Assistant Director of Customer Service. The position included the duties of managing the day-to-day scheduling of custodial staff and conducting quality control. Walcott did not apply for this position, but later claimed that he had indicated to Bunch that he was interested in applying. Walcott alleges that Bunch told him that speaking Spanish was a requirement for the position. Walcott claims he told Bunch that he was from Panama and that he spoke Spanish. Walcott alleges that Bunch then told him that he "didn't look Spanish enough" for the position of Assistant Director of Customer Service. Throughout the case and on appeal, Walcott has described himself as being "very dark skinned." Walcott asserts that, after hearing Bunch's comment, he believed that it would be futile to apply for the position. Bunch later denied telling Walcott that he "didn't look Spanish enough."

Bunch hired Griselda Galan for the position of Assistant Director of Customer Service. Galan is a Hispanic woman who was from Brownsville, Texas.

3

Bunch had previously worked with Galan at another university. Galan became Walcott's supervisor.

Walcott alleged that he reported Bunch's comment that he did not look Hispanic enough to Nicholson-Jones. After he reported the comment, Walcott contends that Nicholson-Jones and Galan began treating him differently. He asserts that Nicholson-Jones started referring to him as the "Hispanic Bulldog" and that Galan started calling him the "Black Columbian." Walcott claims that, after he traveled to Mexico, Galan commented that he must be using drugs and asked if he was a felon. Nicholson-Jones and Galan deny that they ever made such comments.

Nicholson-Jones ultimately recommended to Bunch that Walcott be terminated. Nicholson-Jones would later explain that she had been receiving complaints from university customers that areas for which Walcott was responsible, such as restrooms, classrooms, and carpets, were not being cleaned and that Walcott was not in the buildings where he should be managing staff. Bunch also later stated that he had received complaints about Walcott from staff, who reported that Walcott was not completing his tasks, was not supervising custodial staff, and did not know how to operate cleaning equipment. Bunch accepted Nicholson-Jones's recommendation to fire Walcott, and Walcott's employment with TSU was terminated on May 29, 2009. At that time, Walcott's

4

six-month probationary period had not yet expired. TSU hired an African-American man to fill Walcott's position.

On July 20, 2009, Walcott filed a Charge of Discrimination with the Equal Opportunity Employment Commission. Walcott received right-to-sue letters from the EEOC and from the Texas Workforce Commission. Walcott filed suit against TSU under Chapter 21 of the Texas Commission on Human Rights Act (TCHRA), alleging national origin discrimination and retaliation.[1] Walcott asserted that TSU had discriminated against him based on his national origin when it failed to promote him to the position of Assistant Director of Customer Service and when it terminated his employment. With respect to the retaliation claim, Walcott alleged that he was terminated because he reported Bunch's discriminatory remarks and his concomitant denial of a promotion to Nicholson-Jones.

TSU filed a no-evidence and a traditional motion for summary judgment on Walcott's discrimination and retaliation claims. Walcott filed a response. As summary judgment evidence, both sides relied primarily on the deposition testimony of Walcott, Nicholson-Jones, Bunch, and Galan. Following a hearing, the trial court granted TSU's no-evidence and traditional motions for summary

---

[1] Courts refer to Chapter 21 of the Labor Code as the Texas Commission on Human Rights Act. *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 503 n.1 (Tex. 2012) (citing *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 798 n.1 (Tex. 2010)). Although the Commission on Human Rights has been replaced with the Texas Workforce Commission civil rights division, we refer to Chapter 21 of the Labor Code as the TCHRA. *See id.*

5

judgment with respect to Walcott's discrimination claims without identifying the specific bases for granting the motions. The trial court denied the motions with respect to Walcott's retaliation claim.

TSU then filed a plea to the jurisdiction asserting that Walcott failed to exhaust his administrative remedies with respect to his retaliation claim. TSU argued that the retaliation claim fell outside the scope of what Walcott had alleged in the charge filed with the EEOC. The trial court granted TSU's plea to the jurisdiction, dismissing Walcott's retaliation claim.

This appeal followed. Walcott presents two issues on appeal.

## Summary Judgment on Discrimination Claim

In his first issue, Walcott contends that the trial court erred by granting summary judgment on his discrimination claims.

## A. Summary Judgment Standards

TSU raised both traditional and no-evidence grounds in its motion for summary judgment, and the trial court did not specify on which grounds it based its judgment. *See* TEX. R. CIV. P. 166a(c), (i). In reviewing a grant of summary judgment, we consider the evidence in the light most favorable to the nonmovant. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005)). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the

6

nonmovant unless reasonable jurors could not. *See Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). When, as here, the trial court does not specify the grounds for its grant of summary judgment, we must affirm the summary judgment if any of the theories presented to the court and preserved for appeal are meritorious. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

After an adequate time for discovery, the party without the burden of proof may move for a no-evidence summary judgment on the basis that there is no evidence to support an essential element of the non-moving party's claim. TEX. R. CIV. P. 166a(i); *see Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008). Summary judgment must be granted unless the non-movant produces competent summary judgment evidence raising a genuine issue of material fact on the challenged elements. TEX. R. CIV. P. 166a(i); *Hamilton*, 249 S.W.3d at 426. A non-moving party is "not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements." TEX. R. CIV. P. 166a (Notes & Comments 1997).

A no-evidence summary judgment motion is essentially a motion for a pretrial directed verdict. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581–82 (Tex. 2006). Accordingly, we apply the same legal-sufficiency standard of review that we apply when reviewing a directed verdict. *City of Keller v. Wilson*, 168

7

S.W.3d 802, 823 (Tex. 2005). Applying that standard, a no-evidence point will be sustained when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *see City of Keller*, 168 S.W.3d at 810. Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact, and the legal effect is that there is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). In other words, we review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *See Hamilton*, 249 S.W.3d at 426 (citing *City of Keller*, 168 S.W.3d at 822).

To prevail on a traditional Rule 166a(c) summary judgment motion, a movant must prove that there is no genuine issue regarding any material fact and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004). A defendant moving for summary judgment must either (1) disprove at least one element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of an affirmative defense to rebut the plaintiff's cause. *Cathey v. Booth*,

8

900 S.W.2d 339, 341 (Tex. 1995). The movant must conclusively establish its right to judgment as a matter of law. *See MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller*, 168 S.W.3d at 816.

If the movant meets its burden, the burden then shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

## B. Legal Principles Governing Employment Discrimination Claims

Chapter 21 of TCHRA provides that an employer commits an unlawful employment practice if it discharges an employee or "discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment" on the basis of "race, color, disability, religion, sex, national origin, or age . . . ." TEX. LAB. CODE ANN. § 21.051(1) (Vernon 2006). One of the purposes of the TCHRA is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964." TEX. LAB. CODE ANN. § 21.001(1) (Vernon 2006). For this reason, when analyzing a claim

brought under the TCHRA, we look not only to state cases but also to analogous federal statutes and the cases interpreting those statutes. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012).

In employment discrimination cases, a plaintiff may present his case by direct or circumstantial evidence, or both. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002); *see Mission Consol. Indep. Sch. Dist.*, 372 S.W.3d at 634. If the plaintiff produces direct evidence that discriminatory animus played a role in the decision at issue, the burden of persuasion shifts to the defendant, who must prove that it would have taken the same action regardless of discriminatory animus. *Sandstad*, 309 F.3d at 896 (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 252–53, 109 S. Ct. 1775, 1792 (1989)). If the plaintiff produces only circumstantial evidence of discrimination, the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973) guides our inquiry.

In *McDonnell Douglas Corp. v. Green* and later decisions, the United States Supreme Court established an allocation of the burden of production and an order for the presentation of proof in such cases. 411 U.S. at 802–05, 93 S. Ct. at 1824–25; *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 2106 (2000). Pursuant to the *McDonnell Douglas* framework, the plaintiff is entitled to a presumption of discrimination if he meets the minimal initial burden

10

of establishing a prima facie case of discrimination. *Mission Consol. Independent School Dist.*, 372 S.W.3d at 634 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S. Ct. 1089, 1094 (1981)). "The precise elements of this showing will vary depending on the allegations." *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 477 (Tex. 2001). Nevertheless, "the plaintiff's burden at this stage of the case 'is not onerous.'" *Mission Consol. Indep. Sch. Dist.*, 372 S.W.3d at 634 (citing *Burdine*, 450 U.S. at 253,101 S. Ct. at 1094). The *McDonnell Douglas* presumption is "merely an evidence-producing mechanism that can aid the plaintiff in his ultimate task of proving illegal discrimination by a preponderance of the evidence." *Id.* (citing *Wright v. Southland Corp.*, 187 F.3d 1287, 1292–93 (11th Cir. 1999)).

Establishment of the prima facie case creates a presumption that the employer unlawfully discriminated against the employee. *See Burdine*, 450 U.S. at 253, 101 S. Ct. at 1094. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824; *Quantum*, 47 S.W.3d at 477. "The offer of a legitimate reason eliminates the presumption of discrimination created by the plaintiff's prima facie showing." *Quantum*, 47 S.W.3d at 477. The burden then shifts back to the plaintiff to show that the employer's reason was a pretext for discrimination. *McDonnell Douglas*, 411 U.S.

11

at 807, 93 S. Ct. at 1826–27.  Although intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuading the trier-of-fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.  *See Reeves*, 530 U.S. at 143, 120 S. Ct. at 2106; *Burdine*, 450 U.S. at 253, 101 S. Ct. at 1093.

## C.    Failure to Promote

To establish a prima facie case of discrimination based on a failure to promote, the plaintiff must prove that (1) he belongs to a protected group; (2) he applied for and was qualified for the position he sought; (3) he was not promoted to the position sought, i.e., he suffered an adverse employment action; and (4) his employer promoted an employee to the position sought by the plaintiff who was not a member of the protected class.  *See Villarreal v. Del Mar College*, No. 13–07–00119–CV, 2009 WL 781750, at *4 (Tex. App.—Corpus Christi 2009, pet. denied) (mem. op.); *Browning v. Sw. Research Inst.*, 288 Fed. App'x. 170, 175 (5th Cir. 2008) (citing *Celestine v. Petroleos de Venezuela, S.A.*, 266 F.3d 343, 354–55 (5th Cir. 2001)).

Walcott claimed that TSU unlawfully discriminated against him based on his national origin in violation of the TCHRA by failing to promote him to the position of Assistant Director of Customer Service, the position for which Griselda Galan was hired.  Among the grounds raised by TSU in its traditional motion for

summary judgment was its assertion that Walcott could not, as a matter of law, establish his prima facia case of discrimination based on a failure to promote because the evidence showed that he was not qualified for the position.

In support of this ground, TSU offered a copy of its Manual of Administrative Policies and Procedures. The manual defined the circumstances under which a currently employed TSU employee was qualified to be hired for another position with the university. As pointed out by TSU, the manual provides, "A current staff member must have at least six months employment in their current position to qualify to move laterally or promotionally."

The summary judgment evidence further showed that TSU posted the Assistant Director of Customer Service position approximately four months after Walcott was hired. Galan was hired the following month. In other words, Walcott had not been in his position for six months when the Assistant Director of Customer Service position was posted and filled. Walcott was still in his six-month probationary period at the time. Walcott offered no summary judgment evidence to show that TSU was inconsistent or discriminatory in applying the internal hiring policy.[2]

---

[2] In his opening brief, Walcott asserts that TSU admitted in its motion for summary judgment that the fact that Walcott was still in his six-month probationary period did not preclude his promotion. Walcott misinterprets TSU's statement. TSU stated—citing deposition testimony of Nicholson-Jones—that it did not prevent probationary employees from *applying* for other positions. Nicholson-Jones explained that a probationary

13

We conclude that TSU met its summary judgment burden by conclusively disproving the element of Walcott's failure to promote claim, which requires a showing that he was qualified for the position. Walcott did not meet his summary judgment burden as non-movant to raise a genuine issue of material fact on that element.

We recognize that Walcott also contends the *McDonnel Douglas* framework does not apply because he produced direct evidence that TSU discriminated against him based on his national origin when it failed to promote him to the position of Assistant Director of Customer Service. Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption. *Sandstad v. CB Richard Ellis, Inc*., 309 F.3d 893, 897 (5th Cir. 2002).

In his summary judgment response and on appeal, Walcott contends that Bunch told him that he did not "look Hispanic enough" for the Assistant Director of Customer Service position. Walcott cites his own deposition testimony to

employee's application would be reviewed along with the other applicants. However, such review would show that the probationary employee was not qualified for an internal position under the university's policy unless he had been employed for six months in his current position. In other words, the evidence does not indicate that TSU considered a probationary employee to be qualified simple because it did not prevent him from applying for internal position. He would still need to demonstrate that he met the position's qualifications, including those imposed by the university.

support this contention. He asserts that such evidence is direct evidence of discrimination.

We note, however, that if the employee does produce direct evidence that discriminatory animus played a role in the decision at issue, the burden of persuasion shifts to the employer, who must prove that it would have taken the same action regardless of discriminatory animus. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 252–53, 109 S. Ct. 1775, 1792 (1989); *Sandstad*, 309 F.3d at 896. Even if we assume *arguendo* that the cited evidence was direct evidence of discriminatory animus, TSU offered evidence showing that it would have taken the same action regardless of discriminatory animus. Specifically, it offered conclusive evidence showing that it would not have promoted Walcott because he was not eligible for a promotion under written university policy. TSU was entitled to summary judgment under this theory as well. We hold that the trial court did not err in granting summary judgment on Walcott's failure-to-promote claim.

## E.    Termination of Employment

Walcott claims that TSU unlawfully terminated his employment based on his national origin, that is, because he is Panamanian. Under the circumstances alleged, to establish a prima facie case of discrimination, Walcott must show that (1) he is a member of a protected class, (2) he was qualified to do his job, (3) he was fired, and (4) he was replaced by someone outside of his protected class. *See*

*Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011). Assuming without deciding that Walcott established a prima facia case of national origin discrimination, the burden shifted to TSU to proffer a legitimate, non-discriminatory reason for firing Walcott. *See Tex. Dept. of Cmty Affairs v. Burdine*, 450 U.S.248, 255, 101 S. Ct. 1089, 1094–95 (1981); *Vaughn*, 665 F.3d at 636. This is a burden of production, not of persuasion. *See Reeves*, 530 U.S. at 142, 120 S. Ct. at 2016. To meet its burden, TSU "must clearly set forth, through the introduction of admissible evidence, the reasons for [Walcott's firing]." *See Burdine*, 450 U.S. at 255, 101 S. Ct. at 1094. TSU is allowed to be incorrect in its assessment of the facts on which it relies to justify firing Walcott, but it is not allowed to have any discriminatory animus against him in making its decision. *See Vaughn*, 665 F.3d at 636; *Sandstad*, 309 F.3d at 899.

To meet its burden of production, TSU proffered Nicholson-Jones's and Bunch's deposition testimony. They each testified that Walcott was not satisfactorily performing his job duties as Manager of Custodial Services, which resulted in his termination. Nicholson-Jones testified (1) she received complaints that the classrooms and restrooms for which Walcott was responsible were not being cleaned; (2) Walcott did not delegate cleaning work to his staff; (3) she received complaints that Walcott was often in campus buildings to which he was

16

not assigned to work; and (4) Nicholson-Jones observed that Walcott did not appear to know how to do his job.

Bunch testified Walcott's areas were not being cleaned and "the work just wasn't getting done." He stated that Walcott's co-workers complained that (1) Walcott was not completing his assigned tasks; (2) he was not supervising his staff; and (3) he did not know how to operate the equipment.

An employee's poor job performance is a legitimate, non-discriminatory reason for discharge. *Little v. Republic Ref. Co*., 924 F.2d 93, 96 (5th Cir. 1991); *see McCoy v. Tex. Instruments, Inc*., 183 S.W.3d 548, 556 (Tex. App.—Dallas 2006, no pet.). Thus, TSU met its burden of production. *See Burdine*, 450 U.S. at 255, 101 S. Ct. at 1094–95.

The burden then shifted to Walcott to show that TSU's proffered reason was a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 807, 93 S. Ct. at 1826–27; *Spears v. Patterson UTI Drilling Co.*, 337 Fed. App'x. 416, 419–420 (5th Cir. 2009). In other words, to survive summary judgment, Walcott was required to submit evidence raising an issue of material fact regarding whether TSU's stated reason for terminating him—unsatisfactory job performance—was a pretext for illegal discrimination based on his national origin. *See Jenkins v. Guardian Indus. Corp*., 16 S.W.3d 431, 441 (Tex. App.—Waco 2000, pet. denied) (explaining that, to survive summary judgment, employee is required to come

17

forward with summary-judgment evidence of an unlawful motive once employer's summary judgment evidence establishes a legitimate, non-discriminatory reason for the discharge); *see also Parker v. Valerus Compression Servs., LP*, 365 S.W.3d 61, 68–69 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (discussing burden shifting analysis in summary judgment context with respect to worker's compensation retaliatory discharge claim).

To establish pretext, a plaintiff must show that the defendant's explanation for the employment action is false or unworthy of credence. *See Ptomey v. Tex. Tech Univ.*, 277 S.W.3d 487, 493 (Tex. App.—Amarillo 2009, pet. denied) (citing *Burdine*, 450 U.S. at 256, 101 S. Ct. at 1095); *Vaughn*, 665 F.3d at 636. In his summary judgment responses, Walcott made the following argument with respect to pretext, "No matter what reason Darrell Bunch gives for terminating Emanuel Walcott, Walcott was terminated without ever receiving a verbal warning, a written warning, or any other indication that he wasn't performing his job properly. This violates TSU policy." Related to this argument, Walcott cited specific summary-judgment evidence as demonstrating that TSU's given reason was a pretext for discrimination.[3] In this regard, Walcott relied on Bunch's deposition testimony in

---

[3] On appeal, Walcott argues that pretext for unlawful termination is also shown by his own deposition testimony in which he stated that Galan called him a "Black Columbian" and Nicholson-Jones called him her "Hispanic Bulldog." Walcott did not include this argument in his summary-judgment responses as evidence of pretext as it relates to his termination. As a result, we may not consider such argument on appeal to

18

which Bunch stated that he had fired another employee, an African-American man, after first giving that employee a written and verbal warning.

Although departure from normal institutional procedure might contribute to a finding of pretext, to survive summary judgment, Walcott was required to provide evidence showing that the given reason was false or that his termination was motivated by a discriminatory purpose. *See Spears*, 337 Fed. App'x. at 421 (citing *Richardson v. Monitronics Int'l*, 434 F.3d 327, 336 (5th Cir. 2005)). Walcott cited no such evidence when arguing that TSU's given reason for his termination was pretext for discrimination.

In addition, Walcott did not offer evidence to show that the African-American employee mentioned by Bunch in his deposition testimony was an appropriate "comparator" to show disparate treatment. An employer engages, in disparate treatment when it treats one employee more harshly than other "similarly situated" employees for "nearly identical" conduct. *See Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917–18 (Tex. 2005); *Vaughn*, 665 F.3d at 637. The situations and conduct of the employees in question must be "nearly identical." *Monarrez*, 177 S.W.3d at 917–18. Significantly, Walcott did not offer evidence showing whether the employee mentioned by Bunch was similarly situated to

reverse summary judgment on his termination claim. *See* TEX. R. CIV. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341, 343 (Tex. 1993); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

Walcott with respect to probationary status. *Cf. Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259–60 (5th Cir. 2009) (providing that employees with different supervisors, different work responsibilities, or dissimilar violations are generally inappropriate comparators). The summary judgment evidence showed that some of TSU's employment policies did not apply to probationary employees.

Walcott also cited evidence showing that his termination followed his report to Nicholson-Jones regarding Bunch's comment that he did not "look Hispanic enough." While it is arguably probative of retaliation, such evidence, alone, does not show that TSU's stated reason for Walcott's discharge was false; nor does it show that the termination was motivated by a discriminatory purpose.[4]

We conclude that TSU met its summary judgment burden by presenting conclusive evidence that it did not terminate Walcott based on his national origin but that it had a legitimate, non-discriminatory reason for firing him. Walcott, in turn, did not meet his summary judgment burden to present evidence raising an issue of material fact regarding whether TSU's proffered reason for his termination was pretext for unlawful discrimination. We hold that the trial court did not err

---

[4] We also note that Walcott asserts a hostile work environment claim in his appellate briefing. Walcott did not assert a hostile work environment claim in his original petition or in the summary-judgment proceedings. This assertion may not be raised for the first time on appeal as a ground to reverse summary judgment on his discrimination claims. *See* TEX. R. CIV. P. 166a(c); *McConnell*, 858 S.W.2d at 341, 343; *Clear Creek Basin Auth.*, 589 S.W.2d at 678.

when it granted summary judgment on Walcott's discrimination claim arising from his termination.

We overrule Walcott's first issue.

## Plea to the Jurisdiction

TSU filed a plea to the jurisdiction, asserting that Walcott failed to exhaust his administrative remedies with respect to his retaliation claim because he did not allege the retaliation claim in his EEOC charge form. TSU argued that, as a result, the trial court lacked subject-matter jurisdiction over that claim. Walcott responded that he exhausted his administrative remedies because the allegations in his EEOC charge should be construed broadly to encompass the retaliation claim. He also asserted that his retaliation and national origin discrimination claims are factually related claims that could reasonably be expected to grow out of the administrative agency's investigation of his charge.

The trial court granted TSU's plea to the jurisdiction. In his second issue on appeal, Walcott contends that the trial court erred by granting the plea to the jurisdiction.

## A. Standard of Review

A plea to the jurisdiction is a dilatory plea. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Its purpose is "to defeat a cause of action without regard to whether the claims asserted have merit." *Id*. A plea to the

21

jurisdiction may challenge whether the plaintiff has alleged facts sufficient to affirmatively demonstrate jurisdiction or whether the jurisdictional facts alleged by the plaintiff actually exist. *See City of Waco v. Lopez*, 259 S.W.3d 147, 150 (Tex. 2009). Here, TSU's plea to the jurisdiction challenged the existence of jurisdictional facts.

If a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court must consider the relevant evidence submitted by the parties when necessary to resolve the jurisdictional issue. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004). When the jurisdictional facts are undisputed, the trial court rules on the plea to the jurisdiction as a matter of law, and on appeal the trial court's ruling is reviewed de novo. *Id*. at 228. In this case, the issue is whether Walcott properly exhausted his retaliation claim at the administrative level, and the evidence bearing on that issue is not disputed. Thus, whether Walcott exhausted his administrative remedy with respect to his retaliation claim is a question of law that we review de novo. *See id.*; *see also Lopez v. Tex. State Univ.*, 368 S.W.3d 695, 701 (Tex. App.—Austin 2012, pet. filed).

**B.    Analysis**

The exhaustion of administrative remedies is a jurisdictional prerequisite to filing suit for unlawful employment practices. *See Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996); *Santi v. Univ. of Tex. Health*

22

*Science Ctr. at Houston*, 312 S.W.3d 800, 804 (Tex. App.—Houston [1st Dist.] 2009, no pet.). To exhaust administrative remedies under the TCHRA, a plaintiff must (1) file a complaint with the TWC or the EEOC within 180 days of the alleged discriminatory act; (2) allow the agency 180 days to dismiss or to resolve the complaint; and (3) file suit in district court within 60 days of receiving a right-to-sue letter from the agency and no later than two years after the complaint was filed. TEX. LAB. CODE ANN. §§ 21.202, .208, .254, .256 (Vernon 2006). "The purposes underlying the administrative-complaint requirement include giving the charged party notice of the claim, narrowing the issues for speedier and more effective adjudication and decision, and giving the administrative agency and the employer an opportunity to resolve the dispute." *Lopez*, 368 S.W.3d at 700–01 (citing *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006); *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 878–79 (5th Cir. 2003)).

TSU does not dispute that the administrative charge was timely filed. Instead, the issue on appeal is whether Walcott's retaliation claim alleged in his lawsuit falls within the scope of the administrative charge filed with the EEOC. The law is well settled that the scope of TCHRA litigation is limited to claims that were included in the administrative charge and to factually related claims that could reasonably be expected to grow out of the agency's investigation of the

23

claims stated in the charge. *See Lopez*, 368 S.W.3d at 701; *Santi*, 312 S.W.3d at 805.

We should construe the administrative charge with "utmost liberality." *Santi*, 312 S.W.3d at 805 (citing *Bartosh v. Sam Houston State Univ.*, 259 S.W.3d 317, 321 (Tex. App.—Texarkana 2008, pet. denied)). Nonetheless, the charge must contain an adequate factual basis to put the employer on notice of the existence and nature of the charges. *Bartosh*, 259 S.W.3d at 321.

The crucial element of a discrimination charge is the factual statement contained in the administrative complaint. *Santi*, 312 S.W.3d at 805 (citing 29 C.F.R. § 1601.12(b) (2009) ("a charge is sufficient when . . . sufficiently precise to identify the parties, and to describe generally the action or practices complained of")). "We will not construe the charge to include facts that were initially omitted." *Cnty. of Travis ex rel. Hamilton v. Manion*, No. 03–11–00533–CV, 2012 WL 1839399, at \*4 (Tex. App.—Austin May 17, 2012, no pet.) (mem. op.) (citing *Harris v. David McDavid Honda*, 213 F. App'x 258, 261 (5th Cir. 2006)).

In his EEOC charge, Walcott averred as follows:

On May 21, 2009, I was discharged from position as Manager of Custodial Services. Prior to my discharge, I inquired about a position that was filled a month earlier that I felt qualified for. I was not selected. A Hispanic female was hired as the Asst. Director of Custodial Services. After my inquiry, I was harassed and placed in a hostile work environment on behalf [sic] of Diane Jones, Director of Custodial Services. The new Asst. Director, Griselda Galan notified me of my discharge. . . .

24

The reason given for my termination was poor performance and that I did not fit into the University's plan. During my entire tenure with the University, I had never been given [] performance counseling. No reason was given [for] the way Diane Jones treated me.

I believe that I was subjected to discrimination due to my national origin, Hispanic (Panamanian) in violation of Title VII of the Civil Rights Act of 1964, as amended.

Walcott argues that this language was sufficient to put TSU on notice that he was asserting a retaliation claim.

In a retaliation action brought under the TCHRA, a plaintiff is required to make a prima facie showing that (1) he engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action. *Dias v. Goodman Mfg. Co.*, 214 S.W.3d 672, 676 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); *Niu v. Revcor Molded Prods. Co.*, 206 S.W.3d 723, 730 (Tex. App.—Fort Worth 2006, no pet.). Protected activities consist of (1) opposing a discriminatory practice; (2) making or filing a charge; (3) filing a complaint; or (4) testifying, assisting, or participating in an investigation, proceeding, or hearing. TEX. LAB. CODE ANN. § 21.055 (Vernon 2006); *Dias*, 214 S.W.3d at 676.

In his opening brief, Walcott asserts as follows:

While it would have been better to add that Walcott was retaliated against by Diane Jones, saying that he was harassed and placed in a hostile work environment by Diane Jones clearly puts TSU on notice that Walcott is complaining about treatment he received after

25

complaining to his boss about discrimination. This is sufficient under the law to constitute a charge of retaliation . . . .

TSU contends that Walcott's EEOC charge states only a claim for discrimination. It asserts that the charge does not contain any factual allegations of retaliation. We agree.

In his lawsuit, Walcott alleged that he suffered adverse employment actions after he engaged in the protected activity of reporting Bunch's discriminatory remarks and the concomitant denial of Walcott's ability to apply for a promotion to Nicholson-Jones. In contrast, the factual allegations in the EEOC charge are devoid of any allegation that Walcott engaged in a protected activity resulting in an adverse employment action against him. More precisely, the charge does not allege that Walcott reported Bunch's alleged discriminatory conduct to Nicholson-Jones, as he later claimed in his lawsuit. Rather, in the EEOC charge, the only action Walcott alleges that he took was to inquire about a position. He stated that, after his inquiry, the position was given to a person of a different national origin. Walcott alleged that he was harassed, placed in a hostile work environment, and terminated after inquiring about the position. However, making an inquiry about a position is not a protected activity for purposes of basing a retaliation claim. *See* TEX. LAB. CODE ANN. § 21.055. Even when broadly construed, the EEOC charge contains no statement from which an inference may be drawn that unlawful employment practices were taken against Walcott based on his report of

26

discriminatory practices to Nicholson-Jones. The charge contains no allegations that would serve to put TSU on notice that Walcott was asserting a claim of retaliation. *See El Paso Cnty. v. Navarrete*, 194 S.W.3d 677, 683–84 (Tex. App.—El Paso 2006, pet. denied) (holding trial court lacked subject-matter jurisdiction over retaliation claim because charge contained no allegation that plaintiff had suffered adverse employment action based on the protected activity that plaintiff later alleged in the lawsuit). Similarly, the lack of any allegation that Walcott had engaged in a protected activity also leads us to conclude that the administrative charge could not have reasonably given rise to an investigation of retaliation. *See Univ. of Tex. v. Poindexter*, 306 S.W.3d 798, 810 (Tex. App.—Austin 2009, no pet.).

We conclude that Walcott failed to exhaust his administrative remedy regarding his retaliation claim. As a result, the trial court lacked subject-matter jurisdiction over Walcott's retaliation claim. We hold that the trial court did not err in granting TSU's plea to the jurisdiction.

We overrule Walcott's second issue.

## Conclusion

We affirm the judgment of the trial court.


Laura Carter Higley
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.